# United States Court of Appeals for the Federal Circuit

2009-5015

ACCEPTANCE INSURANCE COMPANIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Lewis S. Wiener, Sutherland Asbill & Brennan LLP, of Washington, DC, argued for plaintiff-appellant. Of counsel were Ronald Massumi and G. Brendan Ballard; and Patrick B. Griffin, Kutak Rock LLP, of Omaha, Nebraska.

Michael N. O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-Appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2009-5015

ACCEPTANCE INSURANCE COMPANIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case No. 03-CV-2794, Judge Thomas C. Wheeler.

_____

DECIDED:  October 1, 2009

_____

Before RADER, PLAGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Acceptance Insurance Companies, Inc. ("Acceptance") seeks reversal of the decision of the United States Court of Federal Claims that dismissed its claim for a compensable taking under the Fifth Amendment.  Acceptance Ins. Cos. v. United States, 84 Fed. Cl. 111 (2008) ("Dismissal Order").  Acceptance brought suit alleging that, when the Risk Management Agency ("RMA"), a component of the Department of Agriculture, declined to approve a proposed sale of certain crop insurance assets to Rain and Hail LLC ("Rain & Hail"), the government rendered those assets valueless and, consequently, effected a categorical taking in violation of the Fifth Amendment.

The Court of Federal Claims dismissed Acceptance's takings claim pursuant to RCFC 12(b)(6) for two reasons. Id. at 120. First, the court held that Acceptance had not alleged a legally cognizable property interest for purposes of the Fifth Amendment. Id. at 115–17. Second, the court held that, even if there was a legally cognizable property interest, Acceptance's claim was precluded under the line of cases following the Supreme Court's decision in Omnia Commercial Co. v. United States, 261 U.S. 502 (1923). See Dismissal Order, 84 Fed. Cl. at 117–20. Because the Court of Federal Claims did not err in holding that Acceptance had failed to allege a legally cognizable property interest for Fifth Amendment purposes, we affirm.

BACKGROUND

I.

Our decision in Acceptance Insurance Cos. v. United States, 503 F.3d 1328 (Fed. Cir. 2007) ("Remand Decision"), which is discussed below, sets forth most of the pertinent facts. Additional facts recited herein are drawn from Acceptance's First Amended Complaint ("Compl."). See, e.g., Papasan v. Allain, 478 U.S. 265, 283–86 (1986) (stating that courts must accept the well-pleaded facts in the complaint as true when reviewing a dismissal for failure to state a claim); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (looking to the well-pleaded facts in the complaint).

The Federal Crop Insurance Corporation ("FCIC") is a wholly-owned government corporation within the Department of Agriculture, established to regulate the crop insurance industry. Federal Crop Insurance Act, 7 U.S.C. §§ 1501, et seq. ("FCIA"); see Remand Decision, 503 F.3d at 1330. Private insurance companies offer crop insurance and are then reinsured (and regulated) by the FCIC. See Remand Decision,

503 F.3d at 1330. When a private insurance provider is eligible for reinsurance through the FCIC, the insurance provider and the FCIC enter into a Standard Reinsurance Agreement ("SRA"), pursuant to which the policies issued by the private insurance provider to producers of agricultural commodities are reinsured. Id.; Compl. ¶ 6. See generally 7 U.S.C. § 1508 (outlining the considerations and requirements that govern crop reinsurance). The RMA is an agency within the Department of Agriculture whose purpose is to supervise the FCIC. See 7 U.S.C. § 6933. Its responsibilities include the "[a]dministration and oversight of all aspects . . . of all programs authorized under the [FCIA]" and "any other functions as the Secretary considers appropriate." See id.; Remand Decision, 503 F.3d at 1330 & n.2. Among other things, the RMA has the authority to approve or disapprove certain transactions that affect the FCIC, such as transactions concerning insurance policies that are governed by SRAs. See, e.g., 7 U.S.C. §§ 1508(h), (k); 7 C.F.R. §§ 400.703–.706 (providing that the RMA will review submissions pertaining to provisions of insurance policies); Compl. ¶ 4.[1]

Acceptance is a publicly traded insurance holding company. At the time relevant to this case, one of its holdings was American Growers Insurance Co. ("American Growers"), a corporation organized under the laws of Nebraska. American Growers provided crop insurance policies that were reinsured pursuant to the federal crop insurance program and, as such, were regulated by the FCIC/RMA.[2] See Compl. ¶¶ 6–8, 13. American Growers' reinsurance relationships were governed by SRAs with the

---

[1]    We note that, for purposes of this appeal, the parties do not contest whether the RMA acted within its authority when it rejected the particular transaction at issue, the proposed sale to Rain & Hail.

[2]    Neither Acceptance nor the government contends that the FCIC and the RMA cannot be considered as one for the purposes of this appeal.

FCIC. <u>See</u> <u>id.</u> ¶ 6. The company therefore was required to comply with certain coverage levels, prices, and premium rates determined by the FCIC. <u>See</u> <u>id.</u> ¶ 8. Because American Growers was organized under the laws of Nebraska, it also was regulated by the Nebraska Department of Insurance ("NDOI"). <u>See</u> <u>id.</u> ¶ 7.

In November of 2002, American Growers disclosed that it had suffered a $130 million loss, causing its policyholder surplus to fall below mandated levels.[3] Acceptance's Br. 4. Subsequently, on November 18, 2002, Acceptance entered into a non-binding letter of intent with Rain & Hail, another company in the crop insurance business. Under the letter of intent, the parties contemplated that Rain & Hail would purchase the crop insurance portfolio serviced by American Growers. <u>See</u> Compl. ¶¶ 9–11; <u>Remand Decision</u>, 503 F.3d at 1330–31. According to the letter of intent, Rain & Hail proposed to purchase approximately 360,000 of American Growers' insurance policies for $21.5 million. <u>See</u> Compl. ¶¶ 10, 12. Acceptance states that, "[b]ecause the insurance assets to be purchased by Rain and Hail were reinsured by the FCIC and [were] subject to the FCIC's general oversight authority over the crop insurance industry, the transaction between Acceptance and Rain & Hail was subject to approval by the RMA." Compl. ¶ 13; <u>see</u> <u>Remand Decision</u>, 503 F.3d at 1330–31. The Administrator of the RMA, however, rejected the proposed sale. According to Acceptance, this was because the Administrator determined the sale would be "detrimental" to the interests of farmers and taxpayers. <u>See</u> Compl. ¶¶ 15–16.

On November 22, 2002, the RMA "ordered American Growers to cease and desist [from] marketing and selling . . . any new insurance contracts under its

---

[3]     Policyholder surplus refers to the amount of an insurance company's assets, in excess of its obligations, that could be used to pay policyholders for insured losses.

reinsurance agreements with the FCIC." Compl. ¶ 18; see Remand Decision, 503 F.3d at 1330–31. In addition, the RMA notified American Growers that the FCIC would not reinsure any new insurance contracts for it. See Remand Decision, 503 F.3d at 1330–31. Soon thereafter, as a result of American Growers' poor financial condition, the NDOI placed the company under supervision and in statutory liquidation. See id. at 1331. Acceptance contends that the RMA then took control of the liquidation and redistributed a portion of American Growers' policies to other crop insurance companies. See Remand Decision, 503 F.3d at 1331. Acceptance received no compensation for the policies that the RMA redistributed. Acceptance alleges that these actions, in concert, effectively put American Growers out of business and rendered Acceptance's property (its interest in American Growers) valueless. Compl. ¶¶ 18, 19.

II.

In due course, Acceptance filed suit in the Court of Federal Claims, alleging that "[w]hen the RMA, acting as agent of the United States, rejected the proposed Rain and Hail/Acceptance transaction . . ., it effected a taking of Acceptance's property, namely certain of Acceptance's assets, which were to be sold to Rain and Hail, for public use." Compl. ¶ 24. As explained in the Remand Decision, the government responded with a motion to dismiss for lack of jurisdiction, arguing that 7 U.S.C. § 1506(d) granted exclusive jurisdiction to the district courts over all suits against the FCIC. Remand Decision, 503 F.3d at 1331. Eventually, the Court of Federal Claims granted the government's motion to dismiss for lack of jurisdiction and transferred the case to the United States District Court for the District of Nebraska. Id. at 1331–32; see

Acceptance Ins. Co. v. United States, 72 Fed. Cl. 299 (2006).  However, on appeal of the district court's denial of Acceptance's motion to retransfer to the Court of Federal Claims, we held that, while 7 U.S.C. § 1506(d) provides exclusive jurisdiction in the district courts for suits against the FCIC, it does not divest the Court of Federal Claims of jurisdiction over a takings claim brought against the United States.  See Remand Decision, 503 F.3d at 1338–39.  Following our decision, Acceptance's action was returned to the Court of Federal Claims.

With the case back in the Court of Federal Claims, the government filed another motion to dismiss, but this time for failure to state a claim under RCFC 12(b)(6).  On September 25, 2008, the court granted the government's motion and dismissed Acceptance's takings claim.  Dismissal Order, 84 Fed. Cl. at 112.  The court did so for two reasons.  First, relying primarily on the rationale in cases such as Mitchell Arms, Inc. v. United States, 7 F.3d 212 (Fed. Cir. 1993), it concluded that Acceptance had not alleged a legally cognizable property interest for purposes of the Fifth Amendment.  Dismissal Order, 84 Fed. Cl. at 115–17.  Despite Acceptance's arguments that the property interest taken by the government was American Growers' tangible insurance portfolio, the court identified the property interest that Acceptance had alleged was taken as its "interest in selling its property to Rain and Hail."  Id. at 116.  In characterizing the property interest this way, the court noted that Acceptance's complaint focused on the RMA's rejection of the proposed sale as the alleged taking and that, following the RMA's rejection of the sale, Acceptance still "retained possession of the insurance portfolio at issue."  Id.  In further support of its conclusion that Acceptance had not alleged a cognizable property interest, the court noted that

Acceptance had voluntarily entered into an area of pervasive government regulation and that any alleged property interest was dependent on the pertinent regulations. Id. at 116–17.

As an alternative rationale for dismissing Acceptance's claim, the court held that, even assuming the existence of a cognizable property interest, the property interest, at most, was "a letter of intent to enter into an agreement [and not even] an actual contract." Dismissal Order, 84 Fed. Cl. at 119. Starting from that premise, the court ruled that the Omnia Commercial, 262 U.S. at 508–513, line of cases—holding that a viable taking does not occur when the government merely causes the loss of benefits of a contract or simply frustrates business expectations—precluded the "taking" of that interest. See Dismissal Order, 84 Fed. Cl. at 117–120. Acceptance has timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

As noted, the Court of Federal Claims dismissed Acceptance's takings claim on the pleadings pursuant to RCFC 12(b)(6). In order to avoid dismissal for failure to state a claim, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); Cambridge, 558 F.3d at 1335. At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan, 478 U.S. at 286). "The question of whether a complaint was properly dismissed for failure to state a claim upon which relief could be granted is one

of law, which we review independently." Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1170 (Fed. Cir. 1995).

The Fifth Amendment to the United States Constitution proscribes the taking of private property "for public use, without just compensation." U.S. Const. V, cl. 4. "Real property, tangible property, and intangible property, all may be the subject of takings claims." Conti v. United States, 291 F.3d 1363, 1338–39 (Fed. Cir. 2002) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992), Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003–04 (1984), and Andrus v. Allard, 444 U.S. 51, 65 (1979)).

A "taking" may occur either by physical invasion or by regulation. See, e.g., Lucas, 505 U.S. at 1014–15. The Supreme Court has long recognized that "if regulation goes too far it will be recognized as a taking." Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922); see, e.g., Lucas, 505 U.S. at 1014–19; Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004); Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003); Conti, 291 F.3d at 1339. This case concerns an alleged regulatory taking.

When evaluating whether governmental action constitutes a taking without just compensation, a court employs a two-part test. First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was "taken." See, e.g., Palmyra Pac. Seafoods, L.L.C. v. United States, 561 F.3d 1361, 1364 (Fed. Cir. 2009); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212–13 (Fed. Cir. 2005); Am. Pelagic Fishing, 379 F.3d at 1372; Conti, 291 F.3d at 1339. "[W]e do not

reach this second step without first identifying a cognizable property interest." <u>Air Pegasus</u>, 424 F.3d at 1213; <u>see, e.g.</u>, <u>Am. Pelagic Fishing</u>, 379 F.3d at 1372.

## II.

### A.

On appeal, Acceptance goes to some length to explain its takings claim. It states that, "as a direct consequence of the RMA's rejection of the sale of assets to Rain & Hail," it "lost the entirety of the crop insurance business it conducted through its wholly-owned crop insurance subsidiary, American Growers, including a large and valuable portfolio of in-force policies." Acceptance's Br. 8. Amplifying, Acceptance points out that after the RMA refused to approve the sale of American Growers, the NDOI seized control of the company's policies. Thereafter, according to Acceptance, the RMA controlled the disposition and redistribution of the American Growers insurance portfolio. Acceptance argues that these actions collectively constituted a categorical taking.

Contending that the Court of Federal Claims' basis for dismissal was incorrect, Acceptance argues that the court incorrectly characterized the asserted property interest as only involving "the taking of a contract or a proposed sale." In Acceptance's view, this characterization was incorrect because it alleged the taking of neither a contract nor a proposed sale, but instead consistently emphasized that the government took actual property—namely, the American Growers crop insurance business. Thus, Acceptance urges, because the government took actual property, it (Acceptance) did assert a cognizable property interest, and therefore its takings claim is distinguishable from those asserted in cases such as <u>Mitchell Arms</u>, 7 F.3d 212.

Acceptance points out that in Mitchell Arms, because the plaintiff actually retained possession of its property—i.e., the firearms at issue—the "only affected interest was the right to sell imported assault weapons in the United States, which existed only by virtue of a revocable federal permit to do so." Acceptance's Br. 11–12. In contrast, according to Acceptance, it is not complaining of the loss of the right in a particular use of its property—i.e., the right to sell its property—but rather the actual loss of the property itself—i.e., the entire crop insurance business of American Growers.

Responding, the government argues that the Court of Federal Claims correctly found no cognizable property interest. The government points out that American Growers' insurance policies were at all times subject to, and governed by, the pertinent FCIC regulatory scheme, which provides the RMA with the authority to reject certain proposed transactions. The government argues that, as a result, the court correctly ruled that no taking could occur because the "taking alleged relates to a right to exclude" that Acceptance never possessed—namely, "the right to exclude the Government from reviewing sales of crop insurance policies." Gov't Br. 22–23. Additionally, according to the government, the court correctly held that, although the government may have precluded Acceptance from realizing a business expectation by preventing the proposed sale, that expectation was entirely dependent upon the RMA's approval of the sale.[4]

---

[4] Both parties make arguments about whether the Court of Federal Claims correctly dismissed Acceptance's claim based on the Omnia Commercial line of cases. Because we hold that Acceptance failed to assert a cognizable property interest, we do not reach those arguments.

B.

As the first step in our analysis, we must identify what, if anything, was the subject of the alleged taking. See Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995) ("In analyzing a takings claim, a court must first determine what was taken."). As just noted, in its briefing on appeal Acceptance characterizes the alleged taking as consisting of several distinct actions viewed in concert. We have stated, however, that such a "characterization . . . is too broad" because "it does not pinpoint what step in the sequence of events . . . constituted conduct that the government could not engage in without paying compensation." Id. (rejecting the plaintiff's characterization of the alleged "taking," which consisted of several distinct events); see, e.g., Kitt v. United States, 277 F.3d 1330, 1336 (Fed. Cir. 2002) (stating that analysis of a takings claim requires identifying the precise governmental action that is the subject of the claim); Creppel v. United States, 41 F.3d 627, 634 (Fed. Cir. 1994) ("[T]his court must determine when the events fixing any potential Government liability [for a taking] occurred."). Notwithstanding the arguments in its brief, Acceptance's First Amended Complaint and statements to the court pinpoint the precise action that it contends constituted conduct the government could not engage in without paying compensation. That action was the RMA's rejection of the proposed sale to Rain & Hail of American Growers' portfolio of insurance policies.

Looking to the complaint, as we must when reviewing a dismissal pursuant to RCFC 12(b)(6), Acceptance consistently focuses on the RMA's rejection of the proposed sale. See generally Compl. ¶¶ 21–30. Specifically, Acceptance states: "The RMA exercised its regulatory authority in rejecting the proposed Rain and

Hail/Acceptance transaction, rendering valueless American Growers' insurance assets . . . .," Compl. ¶ 21; "Acceptance held a reasonable investment backed expectation that the RMA would approve the proposed Rain and Hail/Acceptance transaction," id. ¶ 23. Moreover, in the paragraph that summarizes its takings claim, Acceptance asserts that "[w]hen the RMA . . . rejected the proposed Rain and Hail/Acceptance transaction . . . it effected a taking of Acceptance's property." Id. ¶ 24. Indeed, except for a solitary paragraph in the "Facts" section, which merely provides additional background about the RMA's later actions, see id. ¶ 18, Acceptance's First Amended Complaint focuses exclusively on the RMA's rejection of the proposed sale to Rain & Hail as the alleged taking.

Moreover, at oral argument—not only in this appeal, but in the previous appeal relating to the same takings claim, see Remand Decision—Acceptance made it clear that it alleges a taking occurred when the RMA rejected the proposed sale. In the previous appeal, because the court was skeptical about whether Acceptance had in fact brought a takings claim, the court asked "[c]an you help me identify the taking here?" See Oral Arg., Aug. 8, 2007, 1:01–1:30, available at http://oralarguments.cafc.uscourts.gov/mp3/2007-1127.mp3. Responding, Acceptance stated that it "asserts a Fifth Amendment takings claim based on the government's action in preventing Acceptance from selling its in-force crop insurance business and other insurance related assets . . . ." Id. (emphasis added). When asked to be more specific, Acceptance reiterated that the alleged taking occurred "[w]hen [it] wanted to sell its in-force insurance policies to Rain & Hail," but was prevented from doing so by the RMA. See id. at 2:07–14. In fact, Acceptance pinpointed the RMA's action as the

alleged taking two other times during the same oral argument. See id. at 3:34–46 ("As a consequence of the RMA . . . saying [it] would not authorize or approve of the requested transaction."); id. at 4:40–5:05 ("It is the regulatory action of denying the sale . . . ."). At the same time, Acceptance was consistent during oral argument in this appeal, emphasizing that a taking allegedly occurred when the RMA rejected the proposed sale of American Growers' portfolio. See, e.g., Oral Arg., Aug. 5, 2009, 6:04–6:16, available at http://oralarguments.cafc.uscourts.gov/mp3/2009-5015.mp3 ("The taking is the frustration of saying we will not approve the sale, . . . ."); id. at 7:45–8:00 ("Court: They did not take that property. Acceptance: They certainly did your Honor. . . . By saying to Acceptance, you may not sell those policies to Rain & Hail.").[5]

In short, the action that allegedly constituted conduct that the government could not engage in without paying compensation was the RMA's rejection of the proposed sale to Rain & Hail of American Growers' insurance policy portfolio. We therefore must determine what interest, if any, was affected when that action occurred and whether Acceptance possessed a legally cognizable Fifth Amendment property right in that interest.

## C.

The Court of Federal Claims determined that the interest that was affected by the RMA's action was Acceptance's interest in selling American Growers' crop insurance policies to Rain & Hail. See Dismissal Order, 84 Fed. Cl. at 116. It also determined that such interest was not a legally cognizable property interest for purposes of the Fifth

---

[5] Identifying the alleged "taking" as the RMA's rejection of the proposed sale is consistent with Acceptance's $21.5 million request for damages, which was the value of the proposed sale rejected by the RMA. See Compl. ¶¶ 10, 12, 27.

Amendment. See id. at 116–17. We agree with the court on both counts. The first point requires little discussion. Plainly, what the RMA's action affected was Acceptance's ability to freely sell American Growers' insurance portfolio to Rain & Hail. The critical question is whether this was a legally cognizable property interest.

It is well settled that "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." Conti, 291 F.3d at 1340; see Lucas, 505 U.S. at 1029–30; Am. Pelagic Fishing, 379 F.3d at 1376 ("We determine whether an asserted right is one of the rights in the bundle of sticks of property rights that inheres in a res by looking to 'existing rules or understandings' and 'background principles' derived from an independent source such as state, federal, or common law." (quoting Lucas, 505 U.S. at 1030)). These existing rules often define "the citizen's relation to the physical thing," which may include the right to possess, use, and dispose of the property at issue. See, e.g., United States v. Gen. Motors Corp., 323 U.S. 373, 378 (1945) (explaining that the Fifth Amendment is not concerned "with other collateral interests which may be incident to . . . ownership"); Conti, 291 F.3d at 1340.

Under the "background principles" and rules existing when Acceptance entered into the crop insurance business, Acceptance could not freely transfer the policies at issue. Rather, such action was subject to the RMA's approval. Therefore, Acceptance did not possess a cognizable Fifth Amendment property interest in freely selling American Growers' portfolio of insurance policies to Rain & Hail. See, e.g., Am. Pelagic Fishing, 379 F.3d at 1381 ("Because the right to use . . . was not inherent in its

ownership of the [property], [but instead was totally dependent upon the regulatory scheme,] American Pelagic did not suffer the loss of a property interest . . . when its . . . permits were revoked."); Conti, 291 F.3d at 1342 (affirming dismissal for failure to state a claim because "[t]he absence of crucial indicia of a property right, [such as the right to sell, assign, or otherwise transfer,] coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [the plaintiff's] permit, compels the conclusion that" there was no cognizable property right).

As a general matter, we have no reason to assume that an insurance company, such as American Growers, does not have a property right in the contracts of insurance (the policies) it sells. Similarly, we have no reason to assume that such property right does not include the common law right to sell or assign its interest in the contracts. However, be that as it may, by voluntarily entering into the federally regulated crop insurance business, Acceptance relinquished its right to freely transfer American Growers' insurance policies, in exchange for the benefits of the crop insurance program, such as being reinsured by the government for certain losses. See, e.g., Am. Pelagic Fishing, 379 F.3d at 1379 ("Because it was already in place by the time [the plaintiff] purchased the Atlantic Star, the [regulatory scheme] was an 'existing rule' or 'background principle [ ]' of federal law that inhered in [the plaintiff's] title to the vessel." (quoting Lucas, 505 U.S. at 1029–30)). Accordingly, because the RMA had the authority to deny the sale of the policies at issue, Acceptance, through American Growers, did not possess the unfettered right to sell or otherwise transfer the policies, thus precluding the existence of a cognizable property interest. See, e.g., Am. Pelagic Fishing, 379 F.3d at 1374 (rejecting an alleged property interest in permits and

authorization letters because the government retained the right to deny or sanction those permits and letters); Conti, 291 F.3d at 1341–42 (finding no cognizable property interest in a fishing permit because the plaintiff did not have "[t]he right[ ] to sell, assign, or otherwise transfer" the permit and "the government at all times retained the right to revoke, suspend, or modify the permit").  In other words, when the RMA decided to disapprove of the sale to Rain & Hail, there was no right to freely alienate the policies extant in Acceptance/American Growers with which that decision interfered.  Essentially, Acceptance asks us to recognize a cognizable property right in a decision by the RMA not to exercise its authority to reject the sale of insurance policies subject to the crop insurance regulatory scheme.  We decline to do that.  See Conti, 291 F.3d at 1342 n.5 (finding no cognizable property right "in the government's discretionary decision not to exercise its explicitly granted authority to revoke, suspend, or modify the permit" (citing Bowen v. Public Agencies Opposed to Soc. Sec. Entrapment, 447 U.S. 41, 55 (1986))).  Even assuming that the RMA had previously approved of other similar transactions, any expectation that the RMA would approve of future transactions does not rise to the level of a cognizable property interest because simply "enjoying a use of . . . property that the government chose not to disturb," although could have, does "not equate to a cognizable property interest."  Am. Pelagic Fishing, 379 F.3d at 1377 ("[T]here is a distinction between simply not being disturbed in the particular use of one's property and having the right to that use of the property.  Clearly, in order for there to be a cognizable property interest sufficient to support a takings claim, the latter must be true.").

Acceptance argues, however, that because its physical property—specifically, American Growers—was actually "taken," it did suffer a taking. According to Acceptance, American Pelagic Fishing, Conti, and Mitchell Arms are therefore distinguishable. In each of those cases, Acceptance urges, the plaintiff retained physical possession of the property in question and was only prevented from using the property in a particular manner—e.g., selling the property. We disagree. When the RMA rejected the proposed sale of American Growers' policies to Rain & Hail, the government did not actually "take" American Growers. Rather, Acceptance still maintained possession of American Growers and held the same property interest as it had prior to the RMA's rejection—a property interest that included having American Growers subject to the coverage and capital requirements of the pertinent crop insurance regulations. Put another way, when the RMA rejected the proposed sale, Acceptance possessed no more or no less of a property interest in American Growers than it did prior to the RMA's rejection.

In sum, contrary to Acceptance's arguments, when the RMA rejected the proposed sale, it did not actually take American Growers' insurance policy portfolio. Rather, Acceptance, through its ownership of American Growers, retained possession of the polices, but was barred from selling them to a particular buyer, Rain & Hail. As a result, it was prevented from realizing a business expectation. Under these circumstances, Acceptance's takings claim is not distinguishable from our decisions in American Pelagic Fishing, Conti, and Mitchell Arms, where physical property was retained but a business expectation was frustrated.

2009-5015                                        17

CONCLUSION

For the foregoing reasons, Acceptance did not have a cognizable property interest for Fifth Amendment purposes in the ability to freely transfer American Growers' portfolio of insurance policies. Thus, there was no cognizable property interest that could be "taken" when the RMA rejected the proposed sale to Rain & Hail. We thus affirm the decision of the Court of Federal Claims that dismissed Acceptance's takings claim pursuant to RCFC 12(b)(6). Because we have ruled that Acceptance failed to allege a cognizable property interest, we do not need to address the parties' arguments relating to the Court of Federal Claims' alternative rationale under the Omnia Commercial line of cases for dismissing Acceptance's claim.

AFFIRMED