NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AMIN JUMAH,**

*Plaintiff-Appellant,*

v.

**UNITED STATES,**

*Defendant-Appellee.*

---

2010-5076

---

Appeal from the United States Court of Federal Claims in case no. 08-CV-862, Judge Nancy B. Firestone.

---

Decided: July 9, 2010

---

AMIN JUMAH, of Fort Dix, New Jersey, pro se.

JEFFREY A. REGNER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRYANT G. SNEE, Deputy Director.

---

Before PROST, MAYER, and SCHALL, *Circuit Judges*.

PER CURIAM.

Plaintiff-Appellant Amin Jumah appeals the decision of the United States Court of Federal Claims granting the government's motion to dismiss Mr. Jumah's amended complaint pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6) because it lacked jurisdiction over Mr. Jumah's claims arising in tort and under the Constitution, and because he failed to state a claim for breach of contract. On appeal, Mr. Jumah only challenges the court's decision to dismiss his contractual claims under Rule 12(b)(6). We *affirm*.

BACKGROUND

The following facts are undisputed unless otherwise noted. Mr. Jumah filed suit against the government in the United States District Court for the District of Illinois. The case was transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1361. Mr. Jumah then filed an amended complaint, alleging, inter alia, breach of a written and an implied-in-fact contract, in which he seeks compensatory and punitive damages, United States Citizenship, and 20% of the assets seized by the United States Drug Enforcement Agency ("DEA") during an investigation of illegal pseudoephedrine trafficking known as the Northern Star Operation.

Mr. Jumah served on and off as a confidential source ("CS") to the DEA pursuant to three confidential source agreements ("CSAs") signed by Mr. Jumah and DEA representatives. In that connection, he provided some valuable information concerning illegal drug activity. The CSAs included a provision explaining "I understand that although I may be eligible for compensation for my ser-

vices, the DEA reserves the right to determine whether I will receive any payment or compensation and to determine the amount of such payment or compensation." J.A. 33. They also state, "I understand that no promises may be made, other than by the Immigration and Naturalization Service (INS), regarding my immigration status or right to enter or remain in the United States." *Id.* Typically, the agreements were valid for up to one year. *Id.* Throughout his time serving as a CS, however, Mr. Jumah was "deactivated" during periods where he was unable to provide useful information. He would be "reactivated" through a new CSA signed when his information turned useful. According to Mr. Jumah, his activation and deactivation was always approved and signed by the same agents to whom he provided information.

On appeal, Mr. Jumah contends that he is entitled to compensation for the information that he provided to the DEA while serving as a CS for the Northern Star Operation after May 2001 and until April 2003. Mr. Jumah alleges that when he signed a CSA at the Summit Police Department, the DEA representatives orally promised to add on to the standard contract compensation the amount of 20% of the assets seized during the operation as well as promised to assist with obtaining United States Citizenship and a passport. According to Mr. Jumah on appeal, under this purported agreement, he is entitled to compensation for information he provided "between late 2002 . . . [u]p to December of 2002[-]early January 2003" relating to the Northern Star Operation. Informal Mem. to Answer Points Raised in Resp't or Appellee's Br. ¶ 6. In his affidavit, however, he states only that he was not paid for his work relating to the Northern Star Operation in April of 2003.

The most recent CSA and only one that could have been in effect during the time frame at issue here was

signed on October 11, 2002 and indicated that it would be effective through October 11, 2003. J.A. 33. Mr. Jumah, however, admitted that he was "deactivated in December 2002" in his brief before the Court of Federal Claims. J.A. 34.[1] Mr. Jumah disputes that there was no written contract in effect when he provided the information, and alleges that even if no written contract existed, an implied-in-fact contract did exist. He avers that the agents had the authority to create an implied-in-fact contract based on the previous CSAs and past dealings. According to Mr. Jumah, his meetings and conversations with Special Agent ("SA") Jim Loring in 2003 confirm that there was an agreement and understanding that Mr. Jumah would be compensated for the continued information he provided.

The DEA made at least eight payments totaling $51,900 to Mr. Jumah between September 27, 2001 and March 27, 2003 for information that he provided in 2001 and 2002. *Jumah v. United States*, 90 Fed. Cl. 603, 604 (Fed. Cl. 2009). Mr. Jumah, however, alleges that this compensation was for his work on "operations other than Northern Star." Appellant's Br. 6. He complains that he received only one payment in the amount of $100.00 from SA Loring in January of 2003 in connection with this operation.

On March 2, 2004, while deactivated, Mr. Jumah was arrested for selling pseudoephedrine to someone who was an active CS for the DEA. *United States v. Jumah*, 493 F.3d 868, 871 (7th Cir. 2007). In March 2004, Mr. Jumah

---

[1] In his opening brief on appeal, Mr. Jumah disputes that he was deactivated in December 2002. The government records that Mr. Jumah offers in the appendix attached to his reply on appeal, however, further reflect that he was deactivated at that time.

was permanently deactivated for unsatisfactory behavior. After unsuccessfully arguing that he was acting as a CS when he made the illegal drug sale, he was convicted and sentenced to prison.

Upon motion by the government, the Court of Federal Claims dismissed Mr. Jumah's amended complaint. It concluded that while it had jurisdiction over Mr. Jumah's contract claims, he fails to allege "facts that, if true, would entitle him to relief and preclude dismissal under RCFC 12(b)(6)." *Jumah*, 90 Fed. Cl. at 609. Specifically, the court determined that Mr. Jumah failed to adequately plead that either a written contract or an implied-in-fact contract existed. The court explained that Mr. Jumah admitted that there was no written contract in place during April 2003, the time he allegedly provided the information at issue. Further, the court concluded that the theories under which he predicates an implied-in-fact contract fail because (1) an oral add on that directly contradicts the written contract is unenforceable and cannot create an implied-in-fact contract; (2) one instance with unique circumstances in which Mr. Jumah was paid for information while deactivated does not provide a course of dealing and thus create an implied-in-fact contract; and (3) even if Mr. Jumah believed that SA Loring promised him compensation for information, he failed to allege an implied-in-fact contract because there is no plausible claim that SA Loring had such authority.

Mr. Jumah timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review a decision by the Court of Federal Claims to dismiss a complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6) inde-

pendently. *See Acceptance Ins. Cos. v. U.S.* 583 F.3d 849, 853-54 (Fed. Cir. 2009). To avoid dismissal for failure to state a claim, a complaint must allege facts "plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Id.* at 853 (citations and quotations omitted). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

On appeal, Mr. Jumah argues that he properly stated a claim upon which relief may be granted because he presented sufficient evidence that there was a contract in place that would afford him the relief requested. We disagree. Mr. Jumah's allegations, even if true, fail to state a claim upon which relief may be granted.

Mr. Jumah complains that the court erred in selecting April 2003 as the date for which he seeks compensation for providing information to the DEA, and thus, in finding he admittedly was not under contract at that time. Regardless of whether he provided the information between late 2002 and January 2003, as he now alleges, or April 2003, Mr. Jumah did not have a written contract that can afford him the relief he seeks. Indeed, the CSA on which he relies expressly states that payment and compensation is within the sole discretion of the government and it does not afford promises relating to United States Citizenship or the right to enter or remain in the United States. J.A. 33.

Mr. Jumah also argues that even if a written contract did not exist, the surrounding evidence demonstrates that an implied-in-fact contract existed based on past course of dealing. We reject his assertions. First, Mr. Jumah contends that his CSAs provide the foundation of an implied-in-fact contract. However, the alleged oral prom-

ises that Mr. Jumah argues were made contemporane-
ously with and were to be added on to the written contract
directly contradict the written agreement and are there-
fore unenforceable.   Second, Mr. Jumah dismisses his
admissions that he was deactivated at times as irrelevant
because of "the understanding he ha[d] with the agents."
Appellant's Br. 6.  He claims that his continued payment
vouchers and interactions with SA Loring show that he
had a course of dealing that provides an implied-in-fact
contract.    However, Mr. Jumah alleges only a single
instance where he received payment for information while
deactivated, which alone is insufficient to allege a course
of dealing, particularly in light of the unique circum-
stances of that situation.    Further, we agree with the
Court of Federal Claims that Mr. Jumah fails to allege
facts that make a plausible claim that SA Loring had
authority to create an implied-in-fact contract.

   We find all of Mr. Jumah's remaining arguments are
without merit.   Therefore, accepting all of Mr. Jumah's
allegations as true, he fails to establish a plausible show-
ing of entitlement to relief.   Accordingly, the decision of
the Court of Federal Claims is affirmed.

COSTS

   Each party shall bear its own costs.

**AFFIRMED**