NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NICHOLE MEDICAL EQUIPMENT & SUPPLY, INC.,**
*Plaintiff,*

AND

**DOMINIC ROTELLA,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Apellee.*

---

2013-5101

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0364, Senior Judge Eric G. Bruggink.

---

Decided: March 11, 2014

---

DOMINIC ROTELLA, of Hazle Township, Pennsylvania, pro se.

JAMES SWEET, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN GILLINGHAM, Assistant Director.

———————————

Before PROST, CLEVENGER, and REYNA, *Circuit Judges.*

PER CURIAM.

Dominic Rotella appeals from an order of the United States Court of Federal Claims that dismissed his complaint alleging that the Government breached a settlement agreement concerning the Medicare billing of Nichole Medical Equipment & Supply, Inc. Because Rotella has failed to state a claim upon which relief can be granted, we affirm the Court of Federal Claims's decision.

## BACKGROUND

In 2003, the United States filed a civil action against Nichole Medical Equipment & Supply, Inc., and its owner Dominic Rotella, (together, "Nichole") alleging that Nichole had knowingly submitted false and fraudulent requests for payments for incontinence supplies. In 2006, Nichole and the United States entered into a settlement agreement ("Settlement Agreement"). Under the Settlement Agreement, Nichole agreed to pay the Government $750,000 in installment payments. The Settlement Agreement also stated that if Nichole defaulted on those payments, and failed to cure that default, the United States could offset any remaining balance from any amounts due and owing to Nichole by any department, agency, or agent of the United States. Nichole also agreed to comply with the terms of an integrity agreement ("Integrity Agreement"). The Integrity Agreement required Nichole to, among other things, maintain a compliance

program, provide training to its employees, and provide implementation reports to the Government.

In exchange, the Government released Nichole from any civil or administrative monetary claims for "Covered Conduct," defined as "claims for incontinence supplies during the period from January 1996 to February 2000." J.A. 32. "[R]eserved and excluded from the scope and terms of" the Settlement Agreement was "[a]ny liability to the United States . . . for any conduct other than the Covered Conduct." J.A. 39.

Meanwhile, Nichole was investigated for overpayments for wheelchairs and hospital beds (the "wheelchair/bed action"). As a result of this investigation, and to offset the alleged prior overpayments, a contract payment intermediary withheld payments to Nichole. Ultimately, though, it was determined that those payments should not have been withheld and that Nichole was owed $101,201.44.

After making only a few payments, Nichole defaulted, leaving a balance of $577,354.52. Under the default provision of the Settlement Agreement, the Government directed the contract payment intermediary not to reimburse the $101,201.44 due Nichole from the wheelchair/bed action.

Nichole then sued the United States, alleging that the Government's intermediary contractors violated Medicare regulations, and that such violations breached the Settlement Agreement. According to Nichole, "[i]n the Settlement Agreement the [Government] expressly or impliedly warranted, represented and/or agreed to conduct business with Nichole Medical within the applicable legal and regulatory structure." Nichole alleges that this representation was false. Nichole further alleges that:

> After entering into the Settlement Agreement, [the Government], its constituent agencies, de-

partments and contractors, . . . conducted improper and illegal raids, audits, and/or reopenings of investigations violated applicable statutes and regulations, and improperly suspended and/or setoff payments to Nichole Medical, . . . in violation of the duty of good faith and fair dealing[.]

J.A. 27.

Nichole requests that the court void the Settlement Agreement and require the Government to return all payments made under the Settlement Agreement and reimburse Nichole the withheld funds from the wheelchair/bed action.

In a comprehensive opinion, the Court of Federal Claims dismissed the complaint for failure to state a claim. This appeal followed.

Since the filing of this appeal, Counsel for Appellants has withdrawn and Nichole Medical Equipment & Supply, Inc., as an unrepresented corporation, has been removed from this appeal. Rotella is proceeding pro se.

## DISCUSSION

"We review de novo a decision to dismiss a complaint for failure to state a claim under RCFC 12(b)(6), just as we do dismissals under Federal Rule of Civil Procedure 12(b)(6)." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy." *Id.* "[A] complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

According to Rotella, dismissal was wrong for the following reason:

The Settlement Agreement ("SA") between the Plaintiffs-Appellants and the United States includes terms relating to the resolution of allegations relating to past transactions, and incorporates by reference an Integrity Agreement which relates to all future transactions. When viewed in their entirety, Plaintiffs-Appellants could have plausibly understood it had resolved all prior payment actions and both parties were agreeing to stricter regulatory compliance with regard to future transactions.

Appellant's Br. 14.

But Rotella's argument on appeal fails for several reasons. First, as to "future transactions," the complaint does not adequately allege that the Integrity Agreement required the Government's future activities to comply with Medicare law. Indeed, the Integrity Agreement only imposes an obligation on Nichole—and not the Government—to comply with Medicare law. *See, e.g.*, J.A. 135 ("Nichole/Rotella shall post in a prominent place, accessible to all patients and Covered Persons a notice detailing its commitment to comply with all Federal health care program requirements in the conduct of its business."). And Rotella's argument that it would be unfair to read the Integrity Agreement as requiring Nichole—and not the Government—to comply with Medicare law is irrelevant. As the Government points out, "The issue is whether [Rotella] plausibly alleged that there is a contractual obligation for the Government's future activities to comply with Medicare law, not whether it was fair for there to be no such obligation." Appellee's Br. 16.

Second, as to "past transactions," Rotella does not plausibly allege that the Settlement Agreement resolved all past disputes. According to its express terms, the Settlement Agreement only resolved allegations related to Covered Conduct—that is, allegations related to the

incontinence supplies action, but not the wheelchair/bed action.

Third, even if Rotella "understood" that the Settlement Agreement resolved all of "its problems," such a unilateral understanding is insufficient to support his claims. *See, e.g.*, *Andersen Consulting v. United States*, 959 F.2d 929, 934 (Fed. Cir. 1992) (the "'subjective unexpressed intent of one of the parties' to a contract is irrelevant").

Accordingly, we affirm the decision of the Court of Federal Claims.

**AFFIRMED**

COSTS

Each party shall bear its own costs.