ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Exelis, Inc. | ) | ASBCA No. 60131 |
| | ) | |
| Under Contract Nos. N65236-07-C-5876 | ) | |
| FA8532-12-C-0002 | ) | |

APPEARANCES FOR THE APPELLANT:     Steven M. Masiello, Esq.
                                   Joseph G. Martinez, Esq.
                                   Christopher W. Myers, Esq.
                                    Dentons US LLP
                                    Denver, CO

APPEARANCES FOR THE GOVERNMENT:    E. Michael Chiaparas, Esq.
                                    DCMA Chief Trial Attorney
                                   Samuel W. Morris, Esq.
                                    Trial Attorney
                                    Defense Contract Management Agency
                                    Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS
ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION

The Defense Contract Management Agency (DCMA) timely moves for reconsideration of the Board's 29 August 2016 opinion[1] granting in part the motion to dismiss filed by appellant, Exelis, Inc. (Exelis). In this action, Exelis appeals from a contracting officer's final decision asserting a government claim pursuant to Cost Accounting Standard (CAS) 404, pertaining to Exelis' purportedly noncompliant accounting for the costs of a building lease. Specifically, the contracting officer found that Exelis had improperly treated a building lease as an operating lease, rather than a capital lease, pursuant to Federal Acquisition Regulation (FAR) 31.205-11(m) (1998).[2] Based upon the finding of a FAR violation, the contracting officer determined that Exelis' accounting treatment was not in compliance with CAS 404, and asserted a government claim in the amount of $3,821,534 due to increased costs purportedly paid by the government on Exelis' contracts from 2003 through the present.

---

[1] *Exelis, Inc.*, ASBCA No. 60131, 16-1 BCA ¶ 36,485.
[2] FAR 31.205-11(m) has been revised and reworded and is now codified at 31.205-11(h). The changes are not relevant to the resolution of this motion.

Our opinion granted Exelis' motion in part, holding that the government cannot state a claim for a CAS 404 violation, even assuming that the government is correct that Exelis improperly accounted for the building lease as an operating lease rather than a capital lease. DCMA seeks reconsideration of that holding, alleging legal error. We deny DCMA's motion.[3]

A motion for reconsideration is not the place to present arguments previously made and rejected. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again. Motions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (citations omitted); *see also Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,137 at 176,384.

Moreover, we note that DCMA's argument regarding the interpretation of CAS 404 comprised just five and-a-half pages of its twelve-page brief in opposition to Exelis' motion to dismiss (gov't opp'n at 3-8). Now, DCMA has submitted a 34-page brief devoted solely to this issue. "Put simply, the rulings of a [board] are not 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 301 (1999) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988)). The proper time for DCMA to have made these arguments was in response to Exelis' motion to dismiss, and not in a motion for reconsideration.

Regardless, we have considered DCMA's arguments and they do not change our holding. DCMA asserts three errors in our opinion: 1) that we misinterpreted the text of CAS 404; 2) that we incorrectly held that Generally Accepted Accounting Principles (GAAP) play no role in the interpretation of CAS 404; and 3) that we improperly applied the standard of review by assuming that Exelis' lease of an office building was not a capital lease. None of DCMA's arguments are persuasive.

I. The Board's Opinion Properly Interpreted the Text of CAS 404

DCMA first asserts that the Board's holding "ignores the plain language of the prefatory comments contained within CAS 404-20 and the language of Preamble A to CAS 404, both which recognize that there are financial policies and standards with respect to the capitalization of tangible assets that contractors must follow to satisfy the criteria of CAS 404" (gov't mot. at 7). In support of this argument, DCMA repeats its argument that the lease document itself may represent an intangible asset, but that

---

[3] DCMA additionally requests that its motion for reconsideration be referred to the Board's Senior Deciding Group. That request has been denied.

the leased asset is a tangible asset and thus subject to CAS 404. We rejected this argument in our opinion and nothing in DCMA's motion causes us to modify our holding.

DCMA alleges error in our plain meaning interpretation of CAS 404, arguing that our interpretation is internally inconsistent, and that "[t]he Board cannot have it both ways in this regard – posit on the one hand that no lease is subject to CAS 404, while on the other hand acknowledge that the CAS Board intended for some leases to be subject to the Standard" (gov't mot. at 8). In our opinion we stated that the CAS Board intended "that CAS 404 would only apply in the event that the contractor elected to treat the lease as a capital lease." *Exelis, Inc.*, ASBCA No. 60131, 16-1 BCA ¶ 36,485 at 177,778. It would have been more precise to state that the CAS Board only intended CAS 404 to apply in the event that the contractor treated the lease as a purchase. When CAS 404 was enacted, GAAP did not distinguish between capital and operating leases, and thus the CAS Board would not have had an intent regarding "capital leases." *See* Accounting Principles Board (APB), Opinion No. 5 (Sept. 1964). However, this is a distinction without a difference. At the time of Exelis' lease, FAR 31.205-11(m) (1998), required that "such leased assets (capital leases) be treated as purchased assets." Thus, our opinion assumed that a contractor that elected to treat a lease as a capital lease would, in turn, treat the lease as a purchase and thus be subject to CAS 404.[4]

This Board's interpretation is entirely consistent with Preamble A to CAS 404 which states that "[t]he [CAS] Board agrees that assets actually purchased should (if otherwise appropriate for capitalization) be capitalized even when the purchase transaction is in the form of a lease agreement." Our opinion did not interpret the plain language of CAS 404 as applying to some intangible assets but not others.

We note that DCMA's argument admits that the "language of the CAS 404 standard itself is silent as to its application to leased assets" (gov't mot. at 10). DCMA argues that the prefatory comments to CAS 404, and the preamble to CAS 404 demonstrate an intent by the CAS Board to incorporate GAAP to bring the acquisition of leased assets within the coverage of CAS 404. However, despite its appeal to interpret the terms of the CAS with reference to GAAP, DCMA's motion for reconsideration completely fails to address the fact that GAAP also provides that

---

[4] In opposition to the motion for reconsideration, Exelis appears to argue that a capital lease would only be subject to CAS 404 if the contractor were to consider the lease to be the purchase of an asset (app. br. at 8 n.3). The question of whether a contractor would be subject to CAS 404 if it recognized a lease to be a capital lease pursuant to GAAP but did not recognize the capital lease as a purchase is not before us.

3

leases are "contract based intangible assets." *See Exelis,* 16-1 BCA ¶ 36,485 at 177,777 (citing FAS 141).

DCMA's proposed interpretation also fails because the CAS Board initially proposed language that would have incorporated then current GAAP into the CAS regulation, but the CAS Board removed that language from the final rule. *See* 37 Fed. Reg. 20956, 20957 (Oct. 5, 1972) (draft including the following language that was not included in the final standard, "Leased real or personal property, where the lease provisions are such that the lessee acquires an equity in the property, over the period of the lease, shall be accounted for by the lessee as tangible capital assets."). This clause would have incorporated provisions consistent with APB Opinion No. 5 into the CAS. *See* APB Opinion No. 5, ¶ 15 ("Leases which are clearly in substance installment purchases of property...should be recorded as purchases."). However, this provision was removed from CAS 404 as adopted. Thus, DCMA's argument that the CAS Board intended to incorporate GAAP is not well grounded. *See Teledyne, Inc. v. United States,* 50 Fed. Cl. 155, 174 (2001), *aff'd sub. nom. Allegheny Teledyne Inc. v. United States,* 316 F.3d 1366 (Fed. Cir. 2003) ("Where, as here, [an] interpretation of CAS...hinges on language that was eliminated from the final rule, the argument has no merit"); *see also Mass. Ass'n of Health Maint. Orgs. v. Ruthardt,* 194 F.3d 176, 185 (1st Cir. 1999) (holding that "Congress sometimes can speak as clearly by opting not to enact proffered language as by enacting it") (citing and quoting *INS v. Cardoza-Fonseca,* 480 U.S. 421, 442-43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.")).

DCMA further asserts that "[a] leading authority in CAS reached the same conclusion" that it was necessary to resort to GAAP to determine whether a lease results in a rental or purchase requiring the application of CAS 404 (gov't mot. at 15 n.8) (citing DARRELL J. OYER, ACCOUNTING FOR GOVERNMENT CONTRACTS—COST ACCOUNTING STANDARDS § 13.03(2)(j) (Matthew Bender ed., 2016). However, DCMA ignores the fact that this same authority states in the very same section of that work that "[i]f a capital lease is improperly classified as an operating lease, *the government will review the periodic charges for allowability.* The rule is that any capital lease costs in excess of the prescribed depreciation charges are unallowable." OYER, ACCOUNTING FOR GOVERNMENT CONTRACTS § 13.03(2)(j) (emphasis added). Significantly, Oyer states that the government will review the misclassification of a lease for allowability, a determination pursuant to the FAR, and not that the misclassification of a lease would result in a CAS 404 violation.

Finally we note that DCMA's proposed interpretation of the preamble suffers from several deficiencies. In our opinion, we cited the statement in the CAS Board's regulatory preamble that the CAS Board is "willing that the contractor determine, for each acquisition, whether it is a purchase and hence subject to this capitalization policy

4

(which must comply with the criteria established in this Standard) or a rental transaction and hence subject to established regulations on rental costs," as evidence in support of our interpretation of the plain language of CAS 404 as not applying to lease transactions. In its motion for reconsideration (gov't mot. at 18), DCMA "suggests" that the Board interpret the preamble as follows:

> Those lease acquisitions which are treated as purchases *[under GAAP]* will be subject to this standard.... The Board is, therefore, willing that the contractor determine, for each acquisition, whether it is a purchase *[under GAAP]* and hence subject to his capitalization policy (which must comply with the criteria established in this Standard) or a rental transaction *[under GAAP]* and hence subject to established regulations on rental costs.

38 Fed. Reg. 5319 (Feb. 27, 1973) (Bracketed text inserted by DCMA) First, the proper textual analysis of a regulation does not involve reading words into the text that are not there. *See, e.g., Momenta Pharmaceuticals, Inc. v. Amphastar Pharmaceuticals, Inc.*, 686 F.3d 1348, 1354 (Fed. Cir. 2012) (rejecting interpretation of statute that "would read words into the statute in violation of the express language chosen by Congress"). Second, as noted above, GAAP did not distinguish between capital and operating leases at the time that CAS 404 was drafted. Thus, to the extent that DCMA's proposed interpretation could be correct, it would need to incorporate the then relevant GAAP, and not the later adopted FAS 13. *See BAE Sys. Info. & Elec. Sys. Integration, Inc.*, ASBCA No. 44832, 01-2 BCA ¶ 31,495 at 155,523. When CAS 404 was adopted in 1973, GAAP addressed accounting for leases primarily through APB Opinion No. 5, which indicated that leases that were "clearly in substance installment purchases of property" should be capitalized. APB Opinion No. 5 did not specifically require capitalization of what are today referred to as capital leases that do not transfer ownership. DCMA notes that the opinion includes "certain leases that are purchase-equivalents" as examples of leases that should be recorded as purchases (gov't reply at 8-9). Specifically, APB No. 5 refers to leases where the "term of the lease corresponds substantially to the estimated useful life of the property, and the lessee is obligated to pay costs such as taxes, insurance, and maintenance, which are usually considered incidental to ownership," as leases that should be accounted for as purchases. APB Opinion No. 5, ¶ 11b.

To the extent DCMA is correct that this language demonstrates that APB Opinion No. 5 could be interpreted as controlling capital leases, it simply makes the deletion of language consistent with APB Opinion No. 5 from the final language of CAS 404 more significant. As noted above, the CAS Board initially considered language that would effectively incorporate APB Opinion No. 5 into CAS 404, but deleted that language from the final version of the standard. *See Teledyne*, 50 Fed. Cl.

5

at 174 ("Where, as here, [an] interpretation of CAS...hinges on language that was eliminated from the final rule, the argument has no merit.").

In addition, we note that the new CAS Board adopted CAS 404 without modification. *See* 57 Fed. Reg. 14,191 (Apr. 17, 1992). As the new CAS Board had the opportunity to incorporate the new GAAP treatment of capital leases, and did not, there is no basis to assume that it was the CAS Board's intent to incorporate future revisions to GAAP. Thus, we see no basis to modify our interpretation of plain language of CAS 404.

II.    The Board's Opinion Properly Determined that it Was Not Necessary to Resort to GAAP to Interpret CAS 404

DCMA asserts that the Board committed legal error in holding that GAAP, particularly FAS 13 and ASC 840, did not play a role in interpreting CAS 404 (gov't mot. at 21). DCMA's argument is essentially the same as its argument regarding the proper interpretation of the plain meaning of CAS 404. As described in detail in our opinion, and again above, we reject DCMA's proposed interpretation of CAS 404 as requiring compliance with GAAP. DCMA first argues that our opinion contained "clear legal error" in stating that "to the extent there is a gap [in the language of CAS 404], the government incorrectly attempts to use a GAAP provision to control the CAS when the hierarchy for interpretation of CAS standards provides that the CAS controls" (*Exelis*, 16-1 BCA ¶ 36,485 at 177,778), because GAAP properly can be used to fill gaps in the CAS. However, DCMA reads that sentence out-of-context. Directly below the quoted language, the opinion states that the CAS "provides that the contractor can select whether to treat the lease as a capital lease or an operating lease.... The government seeks to use GAAP, the lowest level of the hierarchy, to interpret the top level of the hierarchy because of a purported 'gap.'" *Id.* at 177,779. The point being that even if there were a gap in the CAS, DCMA is not proposing to use GAAP simply to fill a gap in the standard, but to force a different way of measuring costs on the contractor, changing the meaning of the standard, and creating a conflict between CAS and GAAP.

DCMA additionally argues that the term "assets acquired by lease" is a technical term of art not defined by the CAS and thus requiring reference to GAAP (gov't mot. at 22). As noted above, this logic also undercuts DCMA's argument because reference to GAAP also provides that leases are intangible assets (FAS 141) and, thus, not subject to CAS 404. In addition, DCMA cites former DAR and FAR provisions and an unadopted amendment to the CAS as evidence of the CAS Board's intent. (Gov't mot. at 22-27) As explained in our opinion, the plain language of the CAS controls and if it were necessary to resort to interpretative aids, the contemporaneous preamble to CAS 404 is the most persuasive authority. We see no reason to amend the Board's opinion.

6

## III. The Board's Opinion Applied the Correct Standard of Review

DCMA's final argument is that the Board misapplied the standard of review by failing to grant all assumptions and inferences in favor of the government. Specifically, DCMA asserts that the Board improperly accepted Exelis' assertion that the building lease in question was an operating lease not subject to CAS. (Gov't mot. at 27-28) Contrary to DCMA's assertions, our opinion clearly held that, even if Exelis' lease were a capital lease, it would not result in a CAS violation. 16-1 BCA ¶ 36,485 at 177,775 ("Even if the government is correct that Exelis' accounting for the building lease is in violation of the FAR, we hold that the government cannot establish a CAS violation.").

In our opinion, we found that "Exelis accumulated and reported its lease costs for the Summit Park Building as an operating lease" (*see also* compl. ¶ 18, answer ¶ 18). Further, we noted that the DCMA final decision determined that "Exelis improperly accounted for the Summit Park Building lease as an operating lease when it should have been treated as a capital lease because the present value of the lease payments, at the inception of the lease, was greater than 90 percent of the fair market value of the building" (*see also* compl. ¶ 21, answer ¶ 21). *Exelis*, 16-1 BCA ¶ 36,485 at 177,776, ¶ 7. Assuming all facts in favor of the government, this fails to state a claim given our legal conclusion that leases are not tangible assets and therefore are not subject to CAS 404 unless the contractor treats the lease as a purchase.

DCMA alleges that the Board erred by accepting Exelis' assertion that it "did not purchase or acquire the building and thereby properly characterized the lease pursuant to GAAP" (gov't mot. at 29). However, as noted above, the contracting officer's final decision alleged that Exelis has a capital lease because the net present value of the lease was greater than 90 percent of the value of the building, not that the lease transferred ownership of the property to Exelis at the end of the lease term (*see also* compl. ¶ 10, answer ¶ 10). To the extent DCMA is alleging that the lease transaction legally constitutes an acquisition, we are bound to accept as true the facts as pleaded by the government, but we are "not bound to accept as true a legal conclusion couched as a factual allegation." *Acceptance Ins. Companies, Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, we accept as true that Exelis had a lease that had a net present value greater than 90 percent of value of the building and that this would be a capital lease pursuant to FAS 13 and FAR 31.205-11(m). However, we still hold that these facts, assumed to be true, do not constitute a violation of CAS 404 because the lease is not a tangible asset, and Exelis did not treat the lease as a purchase.

7

DCMA additionally alleges that there could be a CAS violation if Exelis did not comply with its own CAS 404 capitalization policies as set forth in its CAS disclosure statement (gov't mot. at 30-31). However, DCMA did not allege any such violations in the contracting officer's final decision upon which this Board's jurisdiction is premised. As we noted in the standard of review in our opinion, to survive a motion to dismiss for failure to state a claim, the complaint must allege facts "'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp.* 550 U.S. at 557); *American General Trading & Contracting WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905. The allegation "must be enough to raise a right to relief above the speculative level." *Cary*, 552 F.3d at 1376. In addition, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Here, the contracting officer's final decision, and the complaint, do not make *any* allegations regarding noncompliance with a CAS disclosure statement. Moreover, DCMA did not raise such an argument in its opposition to Exelis' motion to dismiss. DCMA's belatedly-raised argument is pure speculation and insufficient to prevent entry of a motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons stated above, DCMA's motion for reconsideration is denied in its entirety.

Dated: 1 March 2017

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60131, Appeal of Exelis, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals