# United States Court of Appeals for the Federal Circuit

---

**HEARTS BLUFF GAME RANCH, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5164

---

Appeal from the United States Court of Federal Claims in Case No. 09-498, Senior Judge Robert H. Hodges, Jr.

---

Decided: January 19, 2012

---

TERRY L. JACOBSON, Jacobson Law Firm, P.C., of Corsicana, Texas, argued for plaintiff-appellant. With him on the brief was STEVEN GREGORY WHITE, Naman, Howell, Smith & Lee, PLLC, of Waco, Texas.

TAMARA N. ROUNTREE, Attorney, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were IGNACIA S. MORENO, Assistant Attorney General, FRANK J. SINGER and KATHRYN E. KOVACS, Attorneys.

―――――――――――――――

Before NEWMAN, LOURIE, and LINN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Hearts Bluff Game Ranch, Inc. ("Hearts Bluff") appeals from the decision of the United States Court of Federal Claims (the "Claims Court") dismissing its claim for just compensation under the Fifth Amendment for an alleged taking based on the Army Corps of Engineers' (the "Corps'") denial of Hearts Bluff's proposal to operate a mitigation bank on its property. *Hearts Bluff Game Ranch, Inc. v. United States*, No. 09-498L (Ct. Cl. June 11, 2010) (the "Order"). Because Hearts Bluff did not have a cognizable property interest in obtaining a mitigation banking instrument, we affirm.

## BACKGROUND

Hearts Bluff purchased approximately 4,000 acres of land in Titus County, Texas, for use as a mitigation bank. *Id.* at 3. A mitigation bank is an offset of preserved and restored wetlands used to compensate for the environmental impact of more destructive land use. *See* Final Guidance for the Establishment, Use and Operation of Mitigation Banks, 60 Fed. Reg. 58605, 58607 (Nov. 28, 1995). Mitigation banking allows landowners who would develop areas protected by pollution-control laws to do so notwithstanding those laws if they protect or improve similar areas in other parts of the country. Landowners can apply for mitigation banking instruments to participate in the program, and then can sell credits under the instrument to developers to offset environmentally destructive projects covered by section 404 permits under the Clean Water Act. *See* 33 U.S.C. § 1344. The Corps is in charge of the mitigation banking program and it has issued regulations to establish procedures for granting

instruments for mitigation banks. One of the requirements of that mitigation bank program is that property held in the mitigation bank must be capable of being held in perpetuity.

Hearts Bluff contacted the Corps prior to purchasing its land, seeking assurances that the land would be suitable for mitigation banking. *Order*, at 3. At the time, the Marvin Nichols Reservoir had been proposed for the region where the 4,000 acres were located, but the Corps communicated that it then saw no impediments to creating the mitigation bank. *Id.* But in 2004, the Corps gave public notice of Hearts Bluff's application, following which the Texas Water Development Board announced that the Reservoir would become less viable (if not infeasible) if the mitigation bank were approved. *Id.* After the 2004 notice, the water plan for the Marvin Nichols Reservoir was elevated from a potential site to "unique value" status, and the Corps learned that the Reservoir was to be adopted in the 2007 State Water Plan with a recommendation that it be constructed. *Id.* at 3–4. The Corps then denied Hearts Bluff's application in July 2006 because the mitigation bank overlapped with the proposed Reservoir and it concluded that Hearts Bluff's land might not exist in perpetuity. *Id.*

Hearts Bluff sought reconsideration of the July 2006 ruling, which the Corps denied in July 2008. *Id.* Hearts Bluff then brought suit in state court, alleging, in part, a Fifth Amendment takings claim against the United States government. That suit was later removed to the U.S. District Court for the Western District of Texas. The takings claim was then subsequently transferred to the Claims Court for trial under the Tucker Act, 28 U.S.C. § 1491(a)(1). Hearts Bluff asserted that the government, acting through the Corps, took its property when the

Corps denied it the necessary permit to create a mitigation bank.

The Claims Court dismissed the complaint for failure to state a claim. The court held that Hearts Bluff did not have a property interest that could be subject to a Fifth Amendment taking because a mitigation banking instrument is not "an inherent stick in a landowner's bundle." *Id.* at 5. The court noted that no landowner has the capacity to develop a mitigation bank absent the enabling regulations and approval of the Corps of Engineers. *Id.* at 6. The court also rejected the argument that Hearts Bluff had an "investment-backed reliance" property interest that was taken, because Hearts Bluff had merely been deprived of a hope that it could create a mitigation bank, which is a collateral interest, not a compensable property interest. *Id.* at 7–8. The court did not reach the merits of the takings claim. Hearts Bluff timely appealed.

DISCUSSION

I.

We review a decision by the Court of Federal Claims to dismiss a complaint for failure to state a claim upon which relief could be granted under RCFC 12(b)(6) *de novo*. *See Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853–54 (Fed. Cir. 2009). To avoid dismissal for failure to state a claim, a complaint must allege facts "plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Id.* at 853 (citations and quotations omitted). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Fifth Amendment of the Constitution prohibits the government from taking private property without just compensation. U.S. Const. Am. V. "Real property, tangible property, and intangible property all may be the subject of takings claims." *Conti v. United States*, 291 F.3d 1334, 1338–39 (Fed. Cir. 2002) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984); and *Andrus v. Allard*, 444 U.S. 51, 65 (1979)). A "taking" may occur either by physical invasion or by regulation. *See, e.g., Lucas*, 505 U.S. at 1014–19; *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004); *Maritrans Inc. v. United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003); *Conti*, 291 F.3d at 1338. This case concerns an alleged regulatory taking.

When evaluating whether governmental action constitutes a taking, a court employs a two-part test. *Acceptance*, 583 F.3d at 854; *Am. Pelagic Fishing*, 379 F.3d at 1372. First, as a threshold matter, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. *Id.*; *see also Maritrans Inc.*, 342 F.3d at 1351. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was "taken." *Id.*; *see also Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1364 (Fed. Cir. 2009); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212–13 (Fed. Cir. 2005); *Conti*, 291 F.3d at 1339. "We do not reach this second step without first identifying a cognizable property interest." *Acceptance*, 583 F.3d at 854 (quoting *Air Pegasus*, 424 F.3d at 1213); *see Am. Pelagic Fishing*, 379 F.3d at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end.").

Hearts Bluff urges us to skip the first "cognizable property interest" part of the test and go directly to the merits under the *Penn Central* factors. *See Penn Central Transp. Co. v. New York*, 438 U.S. 104, 124 (1978). Hearts Bluff spends much of its brief arguing that we routinely reach the *Penn Central* factors in permit-based takings cases without discussing a cognizable property interest. In support of its position, Hearts Bluff relies primarily on cases relating to section 404 permits. *E.g.*, *Norman v. United States*, 429 F.3d 1081, 1088 (Fed. Cir. 2005); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1175 (Fed. Cir. 1994); *Forest Props., Inc. v. United States*, 39 Fed. Cl. 56 (1997), *aff'd* 177 F.3d 1360 (Fed. Cir. 1999). The government responds that this court has consistently applied the two-part test in takings analyses and that the first inquiry, determining if there is a cognizable property interest, is a threshold matter that the court properly decides first. The government also notes that section 404 permits are distinct from mitigation banking.

The government is of course correct that section 404 permits are separate and distinct from the mitigation banking program. Section 404 permits allow landowners to conduct environmentally destructive activity on their land that they would normally be able to do but for the existence of government regulations. We have held that the denial of a section 404 permit could amount to a taking of a cognizable property right as it deprives the landowner of a right inherent in land ownership, as might certain zoning decisions. *E.g.*, *Palm Beach Isles Assocs. v. United States*, 208 F.3d 1374, 1380–81 (Fed. Cir. 2000) (holding that a section 404 permit denial constituted a categorical taking); *Loveladies Harbor, Inc.*, 28 F.3d 1171 (holding that denial of permit under section 404 of was a taking); *Fla. Rock Indus., Inc. v. United States*, 18 F.3d

1560 (Fed. Cir. 1994) (remanding for determination of partial taking regarding a permit under section 404).

Mitigation bank operators, on the other hand, do not necessarily possess section 404 permits; they sell credits from the mitigation banking program to section 404 permit holders or applicants so that the section 404 permit holders or applicants can satisfy the compensatory mitigation obligations of section 404. As discussed below, the mitigation banking program does not restrict land use at all prior to entering into a mitigation banking instrument. The mitigation banking program merely gives access to the credit swapping program. Indeed, section 404 and mitigation banking are governed by different regulations. Therefore, we do not agree with Hearts Bluff's argument that prior cases analyzing the *Penn Central* factors with respect to section 404 permits govern our threshold analysis with respect to mitigation banking instruments. We do not find the section 404 permit cases relevant.

We have established precedent for applying a two-part test for governmental takings mentioned above. *Acceptance*, 583 F.3d at 854; *Am. Pelagic Fishing*, 379 F.3d at 1372; *see also Maritrans Inc.*, 342 F.3d at 1351; *Palmyra Pac. Seafoods*, 561 F.3d at 1364; *Air Pegasus*, 424 F.3d at 1212–13; *Conti*, 291 F.3d at 1339. And it is well settled that we do not reach the second step, evaluation of the *Penn Central* factors, without first identifying a cognizable property interest. *Acceptance*, 583 F.3d at 854; *see Am. Pelagic Fishing*, 379 F.3d at 1372. We decline to depart from such well-settled precedent. The Claims Court was thus correct to determine first whether Hearts Bluff had a cognizable Fifth Amendment property interest before weighing the merits in a takings analysis.

II.

The first step in our analysis then is to identify the subject of the alleged taking. In assessing whether or not a Fifth Amendment property interest exists, we look for "crucial indicia of a property right," such as the ability to sell, assign, transfer, or exclude. *Conti,* 291 F.3d at 1342. Stated differently, we determine whether the asserted property right is "one of the sticks in the bundle of rights that inhered in ownership of the underlying *res.*" *Am. Pelagic Fishing*, 379 F.3d at 1382–83. Where a citizen voluntarily enters into an area which from the start is subject to pervasive Government control, a property interest is likely lacking. *See Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 216 (Fed. Cir. 1993) (citing *Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 55 (1986)). That is not a *per se* exclusion of all permit or regulatory based takings, as Hearts Bluff argues. Instead, it is the nature of the regulation and alleged property interest that determines whether denial of a permit or license (or, in this case, access to the mitigation bank program) is a cognizable property interest.

Hearts Bluff asserts that as a landowner it is entitled to operate a mitigation bank on its land and that the Corps' rejection of its mitigation bank proposal was a taking of its property right. The government counters that Hearts Bluff was never entitled to operate a mitigation bank solely by virtue of its ownership of the land and that it did not have a property right in access to the mitigation banking program because the program is entirely a creature of the government and subject to pervasive and discretionary government control. We agree with the government that Hearts Bluff does not possess a compensable property interest in obtaining a mitigation banking instrument.

"As an initial matter, a claimant seeking compensation from the government for an alleged taking of private property must, at a minimum, assert that *its* property interest was actually taken by the government action." *Air Pegasus*, 424 F.3d at 1215 (emphasis in original). In *American Pelagic Fishing*, the plaintiff had asserted a property right in a fishing permit in part based upon its ownership of a vessel. 379 F.3d at 1373. We held in part that there was no right to fish in the Exclusive Economic Zone ("EEZ") of the United States in the Atlantic Ocean by virtue of purchasing a vessel: "[b]ecause the right to use the vessel to fish in the EEZ was not inherent in its ownership of the [vessel], American Pelagic did not suffer the loss of a property interest . . . when its . . . permits were revoked." *Id.* at 1381. Similarly, in *Mitchell Arms*, we held that the right to import and sell assault weapons in domestic commerce was not "not inherent in [the] ownership of the rifles." *Mitchell Arms*, 7 F.3d at 217. Here, Hearts Bluff has not been disturbed in the use of its property. Hearts Bluff purchased land, not a mitigation bank instrument or mitigation bank credits. At no point did Hearts Bluff possess a right to sell or transfer mitigation bank credits or a mitigation bank instrument. It is possible at some point in the future that the Corps could grant a mitigation bank instrument applicable to the property. But without such an instrument, Hearts Bluff is still able to sell, assign, or transfer the land, or exclude others from its use, as it always was able to do. Hearts Bluff is even free to create and preserve environmentally friendly wetlands on the same property, as it desired to do under the mitigation banking program. In short, the Corps' denial did not diminish in any way the rights Hearts Bluff possessed the day it purchased the land, after it applied for the permit, or after the Corps denied the permit. Owning land in and of itself does not give rise to a right to run a mitigation bank, and obtaining a

mitigation instrument is therefore not a cognizable property interest.

Furthermore, we have rejected claims of a cognizable property interest in government programs where the government has discretionary authority to deny access to that program, where the alleged property is subject to pervasive government control, or where the property is entirely a product of government regulations. *See*, *e.g.*, *Mitchell Arms*, 7 F.3d at 216 ("[E]nforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control.").

For example, in *Acceptance*, we held that the plaintiff's interest in selling American Growers' crop insurance policies was not a legally cognizable property interest because the plaintiff "could not freely transfer the policies at issue" without discretionary government approval, despite the fact that an insurance company may generally have the right to sell its policies. *Acceptance*, 583 F.3d at 857–58. We found that the plaintiff relinquished its right to freely transfer American Growers' insurance policies in exchange for the benefits of the government crop insurance program. *Id.* at 858. In *American Pelagic Fishing*, the plaintiff had asserted a property right in a fishing permit. 379 F.3d at 1373. We held that there was no property interest in the fishing permit because it lacked the crucial indicia of a property right (*e.g.*, the ability to assign, sell, or transfer its permit) and because the government had the discretion to deny or sanction the permit. *Id.* at 1374. And in *Conti* we held that there was no cognizable property interest in a fishing permit because the plaintiff did not have "[t]he right[ ] to sell, assign, or otherwise transfer" the permit and "the government at all

times retained the right to revoke, suspend, or modify the permit." *Conti*, 291 F.3d at 1341–42.

Similarly here, it is undisputed that the Corps has discretionary authority to deny access to the mitigation bank program. The mitigation banking program is run exclusively by the Corps, subject to its pervasive control, and no landowner can develop a mitigation bank absent Corps approval. Mitigation banking in its entirety would not exist without the enabling government regulations. Under our precedent, therefore, the Corps' discretionary denial of access into the Corps program cannot be a cognizable property interest. As Hearts Bluff does not have a property interest in access to the program, it likewise does not have a property interest in the program's related benefits, such as the mitigation banking instrument and credits.

Finally, Hearts Bluff argues that the representations by the Corps that the land was suitable for a mitigation bank gave rise to a reasonable investment-backed expectation property interest. Hearts Bluff argues that the Corps' representations caused it to invest hundreds of thousands of dollars in developing a mitigation bank. The government responds that Hearts Bluff merely hoped that the Corps would exercise its discretion and authorize entry into a mitigation banking instrument, and that such hope or expectation is a collateral interest, not a cognizable property interest. Again, we agree with the government.

First and foremost, the "reasonable investment-backed expectation" is part of a *Penn Central* merits analysis. *Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1362 (Fed. Cir. 2009) ("*Penn Central* considered and balanced three factors: (1) economic impact, (2) reasonable investment backed expectations,

and (3) the character of the government action.").  As we have already indicated, because Hearts Bluff did not have a cognizable property interest by virtue of its ownership of land or in the denial of its application, we do not reach the second step analyzing investment-backed expectations under *Penn Central.*

Hearts Bluff emphasizes that it invested in the property based on the hope that it and the Corps would enter into a mitigation banking instrument and Hearts Bluff could then operate a mitigation bank and sell the related credits.  But such hopes and expectations of future property use are not in and of themselves a cognizable property interest.  *Acceptance*, 583 F.3d at 858–59 ("[A]ny expectation that the [government] would approve of future transactions does not rise to the level of a cognizable property interest . . . ."); *Mitchell Arms*, 7 F.3d at 217 ("[T]he Fifth Amendment concerns itself solely with the 'property,' *i.e.*, with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership.") (quoting *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945)).  In *Mitchell Arms*, the plaintiff had an expectation that it would sell weapons purchased overseas in the United States.  We clarified in a later case that that expectation was a collateral interest and that denying a permit to sell those weapons was not a cognizable property interest. *Cienega Gardens v. United States*, 331 F.3d 1319, 1336 (Fed. Cir. 2003); *see Mitchell Arms*, 7 F.3d at 217.  The expectation of receiving a mitigation banking instrument is a similar collateral interest.  In other words, relying on representations by the Corps in purchasing the land in the hope that the government will grant a discretionary mitigation banking permit does not create a compensable property interest. At its core, Hearts Bluff argues that it detrimentally relied on the promises and representations

of the Corps. Such detrimental reliance, however, does not create a property right under takings law.

As for Hearts Bluff's assertion that the denial of the mitigation banking instrument was arbitrary and capricious, that issue is not before us. Hearts Bluff brought suit under the Tucker Act, a concession that the government action was valid. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) ("[The] claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act."). In order to challenge the legality of the denial of the mitigation banking instrument, Hearts Bluff would have had to sue in a district court under the Administrative Procedure Act. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (The Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review [an] agency's actions and to grant relief pursuant to the Administrative Procedure Act."). It did not.

CONCLUSION

Because the Court of Federal Claims did not err in holding that Hearts Bluff did not possess a legally cognizable Fifth Amendment property interest in a mitigation bank instrument, we affirm.

**AFFIRMED**