# In the United States Court of Federal Claims

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | \* | No. 11-439L |
| ROBERT A. LUCIANO, JR., Trustee of the | \* | |
| Robert A. Luciano Jr. Revocable Trust Dated | \* | (Filed: August 15, 2013) |
| February 27, 1995, | \* | |
| | \* | Fifth Amendment takings; |
| Plaintiff, | \* | water rights takings claim; |
| | \* | 1866 and 1891 Act ditch |
| v. | \* | rights takings claim; ripeness |
| | \* | of regulatory takings claim; |
| UNITED STATES OF AMERICA, | \* | standing to bring takings |
| | \* | claim; statute of limitations |
| Defendant. | \* | for takings claim. |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Richard H. Hart, Jr.*, Law Office of Richard H. Hart PC, Tahoe City, CA, for plaintiff.

*Charlotte M. Youngblood*, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, with whom were *Ignacia S. Moreno,* Assistant Attorney General, *Robert G. Dreher*, Acting Assistant Attorney General, and *William J. Shapiro*, Environment & Natural Resources Division.

## **OPINION**

MARGOLIS, *Senior Judge*.

This matter comes before the Court on defendant's Motion for Summary Judgment, filed December 10, 2012, plaintiff's corrected Cross-Motion for Summary Judgment, filed January 15, 2013, and defendant's Motion to Strike Exhibits, filed February 22, 2013. Oral argument was held on June 5, 2013. The Court finds that plaintiff's water rights takings claim is unripe, but that plaintiff's real property takings claim (the "cabin claim") contains genuine issues of material fact. The Court therefore grants in part and denies in part defendant's Motion for Summary Judgment and denies plaintiff's Cross-Motion. Defendant's Motion to Strike is denied as moot, because the evidence that defendant seeks to exclude does not create a genuine issue of material fact for plaintiff's water rights claim.

## I. BACKGROUND

Plaintiff, Robert A. Luciano, Jr., as trustee, is the sole owner of real property located in Plumas County, California. In his Complaint, filed July 5, 2011, plaintiff alleges that the original

owner, Erza Culver, filed a claim in 1875 to take 200 miners inches of water by ditch from Wash Creek. He alleges that in 1877, the state of California recognized and enforced Culver's water rights, and that it has consistently done so since then. He alleges that in 1882, Culver obtained a United States Homestead Patent for the property, and that when the United States created the Plumas National Forest in 1905, the owner at the time obtained an easement across Forest Service land for taking the water and maintaining the necessary ditches pursuant to 43 U.S.C. §§ 661, 946-949. He alleges that the successive owners have continuously used that easement ever since and that he purchased the property in 1995 and made significant improvements in reliance on these rights.

Plaintiff further alleges that defendant, the United States, has prevented him from using his water rights by harassing him and threatening to prosecute him for trespassing on federal land. He alleges that defendant incorrectly asserts that because a 1997 flood moved the diversion point, plaintiff no longer holds the original easement and must now apply for a permit to continue diverting water across Forest Service land. Additionally, he alleges that in direct response to his counsel's letter regarding these issues, defendant demanded that plaintiff remove the original Homestead house (the "cabin"), because according to defendant's 1993 resurvey, half of the cabin lies on federal land. He alleges that defendant threatened that unless plaintiff removes the cabin, it will civilly and criminally prosecute him and demolish the cabin at his expense. He alleges that together, defendant's actions: (1) amount to a physical interference with his water rights that threatens to make his property worthless, and (2) have deprived him of the peaceful possession and enjoyment of the cabin. He asserts two takings claims under the Fifth Amendment of the United States Constitution: a regulatory takings claim for his water rights, and a physical takings claim for the cabin.

On October 21, 2011, defendant moved to dismiss the Complaint under RCFC 12(b)(1), 12(b)(6), and 12(h)(3), arguing that the water claim fails to state a claim on which relief can be granted and is unripe because plaintiff never applied for a special use permit (a "SUP")[1] to continue diverting the water, that the cabin claim fails to state a claim and that plaintiff lacks standing because his deed defines his boundaries according to the 1993 resurvey, and finally, that the cabin claim is untimely under 28 U.S.C. § 2501's limitation period because it is based on the 1993 resurvey. On February 16, 2012, the Court held a hearing on defendant's motion and denied it from the bench, holding that plaintiff had stated claims upon which relief could be granted, and that the Court would wait until summary judgment proceedings or trial to resolve the jurisdictional issues of ripeness, standing, and the § 2501 limitation period because the facts underlying these issues are closely intertwined with the facts on the merits. (Transcript of February 16, 2012 proceedings at 44-48.) The parties then completed discovery on the jurisdictional issues and filed the instant motions.

---

[1]     *See* 36 C.F.R. § 251.50(a).

## II. STANDARD FOR SUMMARY JUDGMENT UNDER RCFC 56

Summary judgment is appropriate if there are no genuine issues of material fact. RCFC 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. "[O]nce the moving party comes forward with evidence satisfying its initial burden on a motion for summary judgment, the party opposing the motion must present evidence creating a genuine issue of material fact." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). In determining whether to grant the motion, the Court must not weigh the evidence or make credibility determinations and must draw "all reasonable inferences in favor of the nonmovant." *Anderson,* 477 U.S. at 255; *American Calcar, Inc. v. American Honda Motor Co.*, 651 F.3d 1318, 1336 (Fed. Cir. 2011).

## III. ANALYSIS

The Fifth Amendment of the United States Constitution prevents the government from taking private property without providing the owner just compensation.[2] Courts use a two-part test to determine whether a claimant is entitled to compensation. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1329 (Fed. Cir. 2012). First, the court determines whether the claimant has identified a "cognizable Fifth Amendment property interest" that it claims the government has taken. *Id.* The interest must be "one of the sticks in the bundle" of ownership rights. *Id.* at 1330. Second, the Court determines whether the government has taken that interest. *Id.* at 1329. A taking may occur by physical invasion or by regulation. *Id*. at 1328. A claimant can recover for any permanent physical invasion of real property, even a minimal one, and a claimant can recover for a regulatory taking if it can show that the regulation "goes too far." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (quoting *Pennsylvania Coal Company v. Mahon*, 260 U.S. 393, 415 (1922) (J. Holmes)). A regulation goes too far if it denies all economically beneficial use of the property, or if the claimant shows that it goes too far under the *Penn Central* factors: (1) the regulation's economic impact on the claimant, (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action. *Palazzolo*, 533 U.S. at 617; *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).

---

[2] The Fifth Amendment provides:

> . . . [N]or shall private property be taken for public use, without just compensation.

### A. Water Rights Claim

#### 1. Ripeness

Defendant argues that plaintiff's water rights claim is unripe because he has not applied for a SUP, and thus has not given defendant a chance to reach a final decision as to what activities plaintiff may undertake on Forest Service land in maintaining his ditches and diverting his water. It argues that under 36 C.F.R. § 251.50(a), SUPs are required for all uses of National Forest System lands and resources except those uses otherwise authorized, and that until plaintiff obtains a SUP, his activities are in trespass. Plaintiff argues that his claim is ripe because defendant has made a final decision that he does not own vested water and ditch rights under 43 U.S.C. § 661 (the "1866 Act") [3] and 43 U.S.C. §§ 946-949 (the "1891 Act").[4] He cites 36 C.F.R.

---

[3]     43 U.S.C. § 661 provides in its entirety:

> Appropriation of waters on public lands; rights of way for canals and ditches

> Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage.

> All patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by this section.

[4]     These sections provide in relevant part:

> § 946. Right of way to canal ditch companies and irrigation or drainage districts for irrigation or drainage purposes and operation and maintenance of reservoirs, canals, and laterals

> The right of way through the public lands and reservations of the United States is granted to any canal ditch company, irrigation or drainage district formed for the purpose of irrigation or drainage, and duly organized under the laws of any State or Territory . . . to the extent of the ground occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof, and, upon presentation of satisfactory showing by the applicant, such additional rights of way as the Secretary of the Interior may deem necessary for the proper operation and maintenance of said reservoirs, canals, and laterals; also the right to take from the public lands adjacent to the line of the canal or ditch, material, earth, and stone necessary for the construction of such canal or ditch: *Provided*, That no such right of way shall be so located as to interfere with the proper occupation by the Government of any such reservation, and all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation; and the privilege herein granted shall not be construed to interfere

*Continued on next page …*

§ 251.50(e)(3),[5] which provides that a SUP is not required for routine maintenance activity within the scope of an 1866 Act ditch right, and argues that in light of this regulation, defendant's assertion of the SUP requirement means that defendant has decided that he lacks vested statutory rights. He argues that applying for a permit would be futile, because defendant has already decided not to grant him permission to continue his water use under the 1866 and 1891 Acts, and that even if defendant grants him a SUP for all of his current activities, he will

---

with the control of water for irrigation and other purposes under authority of the respective States or Territories.

§ 948. Application to existing and future canals

The provisions of sections 946 to 949 of this title shall apply to all canals, ditches, or reservoirs, heretofore or hereafter constructed, whether constructed by corporations, individuals, or association of individuals, on the filing of the certificates and maps therein provided for. . . .

§ 949. Use for canal or ditch only

Nothing in sections 946 to 949 of this title shall authorize such canal or ditch company to occupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance, and care of said canal or ditch.

[5]    36 C.F.R. § 251.50 provides in relevant part:

Scope.

(a) All uses of National Forest System lands, improvements, and resources, except those authorized by the regulations governing sharing use of roads (§ 212.9); grazing and livestock use (part 222); the sale and disposal of timber and special forest products, such as greens, mushrooms, and medicinal plants (part 223); and minerals (part 228) are designated "special uses." Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization from the authorized officer, unless that requirement is waived by paragraphs (c) through (e)(3) of this section.

    . . . .

(e) For proposed uses other than a noncommercial group use, a special use authorization is not required if, based upon review of a proposal, the authorized officer determines that the proposed use has one or more of the following characteristics:

    . . . .

(3) The proposed use is not situated in a congressionally designated wilderness area, and is a routine operation or maintenance activity within the scope of a statutory right-of-way for a highway pursuant to R.S. 2477 (43 U.S.C. 932, repealed Oct. 21, 1976) or for a ditch or canal pursuant to R.S. 2339 (43 U.S.C. 661, as amended), or the proposed use is a routine operation or maintenance activity within the express scope of a documented linear right-of-way.

5

still have suffered a loss, since defendant has already extinguished his ownership rights and has not provided any separate administrative procedure for restoring them. Defendant counters that even if plaintiff has vested rights, defendant can reasonably regulate them; that under § 251.50(e), even an 1866 Act rights holder must first submit an initial "proposal" so that defendant can determine whether the holder needs to apply for a SUP; and that a permit requirement can never be a taking, even when the government asserts it in error.

A regulatory takings claim ripens when the government reaches a final decision regarding how its regulations apply to the claimant's property, because only then can the court know whether the regulation "goes too far." *Palazzolo*, 533 U.S. at 618, 622; *CRV Enterprises, Inc. v. United States*, 626 F.3d 1241, 1249-1250 (Fed. Cir. 2010). Thus, where a claimant can apply for a permit, the claim ordinarily does not ripen until the government denies the application, and the government's mere assertion of the permit requirement is not a taking. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126-127 (1985) ("[T]he very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired.") This is true even where the government asserts its regulatory authority in error or misapplies its own regulations. *Tabb Lakes, LTD. v. United States*, 10 F.3d 796, 802-803 (Fed. Cir. 1993) ("[A] claimant must concede the validity of the government action which is the basis of the taking claim . . . [a] mistake may give rise to a due process claim, not a taking claim."); *see also Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365-1366 (Fed. Cir. 2001) (a claimant can litigate a takings claim on the theory that there is a taking *regardless* of whether the agency violated a statute or regulation, but not on the theory that there is a taking *because* the agency violated a statute or regulation).

Thus, in *Estate of Hage v. United States*, the United States Court of Appeals for the Federal Circuit rejected arguments similar to the ones that Luciano now makes. 687 F.3d 1281 (Fed. Cir. 2012). There, as here, the plaintiffs asserted a takings claim in this Court based on defendant's interference with their ditch maintenance, and they argued that they did not need to apply for a SUP to ripen it because they had vested 1866 Act ditch rights. *Hage v. United States* (*Hage I*), 35 Fed. Cl. 147, 162 (1996) ("Plaintiffs assert as a matter of law that forcing them to submit to the permit process itself constitutes a taking because it requires plaintiffs to exchange protected property rights for potential property rights.") In its earlier rulings, this Court held open the possibility that the SUP requirement itself could be a taking, before ultimately finding instead that plaintiffs' claim was ripe without plaintiffs applying for a SUP because applying would have been futile. *Estate of Hage v. United States* (*Hage V*), 82 Fed. Cl. 202, 212-213 (2008), *rev'd in part*, 687 F.3d 1281 (Fed. Cir. 2012). On appeal however, plaintiffs argued again that the SUP requirement was a taking, and the Court disagreed, holding that it was not a taking because the government may regulate private property so long as it does not go too far. *Hage*, 687 F.3d at 1287-1288.

Luciano correctly points out that the Federal Circuit did not decide the precise issue that he now raises, since in *Hage*, the dispute centered around whether defendant prohibited the

6

plaintiffs from using heavy equipment even with a SUP, with the plaintiffs arguing that it did, and the defendant arguing that it allowed them to perform "normal" maintenance without a SUP, and other maintenance with a SUP. *See id.* at 1288; *Hage V*, 82 Fed. Cl. at 212-213; *Hage I*, 35 Fed. Cl. at 161. The Court agreed with defendant, holding that the record supported defendant's position "that the hand tools requirement only applied in the absence of a [SUP]." *Hage*, 687 F.3d at 1288. Thus, it was possible to reconcile the regulation, which merely required a SUP for certain uses of 1866 Act ditch rights, with the plaintiffs' continued ownership of those rights, and the Court did not determine whether defendant's decision that a party lacks ditch rights can be a taking.

However, the Federal Circuit did consider a nearly identical issue in *Stearns Company v. United States*, and it resolved it in favor of defendant. 396 F.3d 1354 (Fed. Cir. 2005). There, the plaintiff owned mineral rights in a national forest and an implied appurtenant surface easement to access and remove the minerals. *Id.* at 1356. However, the Surface Mining Control and Reclamation Act of 1977 ("SMCRA") prohibited surface mining unless the miner either: (1) had "valid existing rights" ("VER"), or (2) secured a determination from defendant that its mining was compatible with the land's other resources. *Id.* (citing 30 U.S.C. § 1272(e) (2000)). Defendant determined that the plaintiff lacked VER, and the plaintiff sued without seeking a compatibility determination on the theory that defendant's decision that plaintiff lacked VER was itself a taking because it unilaterally transferred plaintiff's surface easement to defendant. *Id.* at 1356-1357.

Despite the plaintiff's failure to seek a compatibility determination, the Court of Federal Claims found that defendant's decision to deny plaintiff VER status was a ripe physical taking for many of the same reasons that Luciano here believes he has suffered a ripe taking. *Stearns Co. v. United States*, 53 Fed. Cl. 446, 447-455 (2002), *rev'd*, 396 F.3d 1354 (Fed. Cir. 2005). Nevertheless, the Federal Circuit reversed, holding that defendant's decision to deny the plaintiff ownership status was not a taking, and that plaintiff's claim was unripe because plaintiff failed to seek a compatibility determination. *Stearns Company*, 396 F.3d at 1358. "Failure to obtain VER status has not . . . defeated [plaintiff's] expectation that it may use the property in question. To the contrary, [plaintiff] may still obtain permission to use its easement and access the mineral estate . . . by refusing to seek a compatibility determination, [plaintiff] prevents this court from knowing whether or to what extent the agency will restrict the use of the property at issue." *Id.*

Although *Stearns* involved mining rights, it is directly analogous to Luciano's case and is binding precedent that this Court must follow. Defendant's alleged decision that plaintiff lacks vested water and ditch rights under the 1866 and 1891 Acts cannot be a taking because it alone has not defeated plaintiff's expectation to use those property rights. Plaintiff could have applied for a SUP to continue his uses, but has chosen not to, and whether defendant asserted the SUP requirement in error is irrelevant. *See Tabb Lakes*, 10 F.3d at 802-803. The law requires plaintiff to apply for a SUP before suing so that defendant can reach a final decision regarding how its regulations apply to his rights, because only then can the Court measure the true burden

of defendant's regulations on plaintiff's property interests.  Plaintiff's water rights claim is unripe, and the Court thus lacks jurisdiction and must dismiss Count I of plaintiff's Complaint.

### 2. Beneficial Use

Defendant argues that even if plaintiff's water rights claim is ripe, it fails as a matter of law because defendant has never prevented plaintiff from diverting as much water as he can put to beneficial use.  Because the Court finds that plaintiff's water rights claim is unripe, this argument is moot.

## B. The Cabin Claim

### 1. Standing

Defendant argues that because plaintiff's deed defines his boundaries by the 1993 resurvey, he never owned any property on defendant's side of the resurvey line that bisects the cabin and thus lacks standing to sue with regard to defendant's decision that plaintiff must remove the cabin.  Plaintiff argues that he owns the entire cabin and the land on which it sits because the 1993 resurvey is invalid and cannot alter the property's original boundaries.

A takings claimant must identify a cognizable Fifth Amendment property interest, (a stick in the bundle of ownership rights), which it claims the government has taken.  *Hearts Bluff*, 669 F.3d at 1329-1330.  Whether it owns such an interest is a standing issue and therefore a jurisdictional issue.  *CRV Enterprises*, 626 F.3d at 1249; *Rogers v. United States*, 95 Fed. Cl. 513, 514 n.1 (2010).  Here, plaintiff owns a cognizable Fifth Amendment property interest that he alleges defendant has taken – an interest in the cabin itself.  First, regardless of the effect of the 1993 resurvey and whether plaintiff owns the land underneath the cabin, there is a genuine issue of fact as to whether plaintiff owns the entire cabin.  Defendant itself has consistently described the cabin as an "encroachment" rather than as joint property, does not appear to claim ownership to any part of it, and has suggested that it is plaintiff's responsibility to pay for demolishing or moving it.[6]  Second, even if plaintiff only owns half of the cabin, this is a cognizable property interest that would be affected by defendant's decision to remove its own

---

[6]     In an April 4, 2001 letter to plaintiff's agent, Acting District Ranger G. Grandinetti wrote:  "We have reviewed the February 14, 2001 letter and application of your client Mr. Luciano, requesting the resolution of an encroachment under the Small Tracts Act."  (Def.'s Mot. for Summary Judgment, Ex. 16.)  Similarly, in a November 17, 2010 letter to plaintiff, District Ranger Deb Bumpus wrote:  "The remaining topics to be resolved are: a) the encroachment of a structure," and "[a]t the meeting, I proposed that the Forest could allow you to remove the structural encroachments (Erza Culver cabin and root cellar . . . ."  (*Id*., Ex. 23.)  Finally, in an April 11, 2011 letter to plaintiff, Deb Bumpus wrote:  "If the Forest Service is forced to remove the encroaching structures the actual expenses for removal of the structures from National Forest lands and the restoration of the disturbed area due to the removal of the structures may be billed to you."  (*Id*., Ex. 25.)

half of the cabin.  *See CRV Enterprises*, 626 F.3d at 1246 (government action occurring outside of a claimant's land can lead to a physical taking).

Further, there are genuine issues of fact regarding the extent of plaintiff's property interest in the cabin and whether that interest includes the right to keep the cabin in place, such as:  (1) whether the original owner built the cabin in trespass, (2) whether the 1993 resurvey is accurate, (3) whether plaintiff owns the half of the cabin that defendant claims is encroaching, and if so, when, how, and under what terms he acquired it, and (4) whether plaintiff can move the cabin without destroying its value.  Thus, defendant is not entitled to summary judgment on the standing issue at this time, and the Court will resolve it after further discovery or a trial on the merits.[7]

### 2.  Statute of Limitations

Defendant argues that 28 U.S.C. § 2501 bars plaintiff's cabin claim because this claim is based on the 1993 resurvey, and plaintiff did not file suit within the statute's six-year limitation period.  Defendant argues that it physically invaded the disputed land, and that plaintiff had actual knowledge of this invasion and the resurvey's boundary through the cabin no later than 2000.  Plaintiff argues that his claim is not based on the resurvey, but upon defendant's decision that plaintiff must remove the cabin, which defendant did not finalize until 2010.

A takings claim accrues under § 2501 when all the events fixing the government's liability and entitling the claimant to sue have occurred, and the claimant knew or should have known that the claim existed.  *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006).  Whether § 2501 bars a claim is a jurisdictional issue.  *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1349-1350 (Fed. Cir. 2011).  Nevertheless, the Court may wait to resolve it until summary judgment proceedings or trial if the facts are closely intertwined with the facts underlying the merits.  *See DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008); *Augustine v. United States*, 704 F.2d 1074, 1077-1079 (9th Cir. 1983).

Physical takings claims generally accrue when the government first encroaches on or occupies the claimant's property.  *See Hutchens v. United States*, 89 Fed. Cl. 553, 561 (2009).  Here, the parties' evidence shows that defendant's surveyor marked the resurvey line that bisects the cabin with fence posts and signs, and that plaintiff discovered them and was aware of the

---

[7]   Although standing is a jurisdictional issue, the fact issues are closely intertwined with if not identical to the merits fact issues because the alleged taking is defendant's decision that plaintiff has no property interest in keeping the cabin in place and must remove it.  *See Science Applications International Corp. v. United States*, 102 Fed. Cl. 644, 656 (2011).  Thus, the Court will wait to resolve it.

resurvey's effect by January 13, 2000.[8] However, plaintiff's claim is for the cabin, and it did not necessarily accrue at the same time as any claim he might have had for the land, even if the 1993 resurvey was the initial event that led to both claims. *See Cooper v. United States*, 827 F.2d 762, 764 (Fed. Cir. 1987) (timber takings claim accrued when damage to timber was ascertainable, not when flooding began; "Although the operative force, flood water, was the same in both cases, it operates differently, and at different times, to cause a taking of land by inundation, or a taking of timber by suffocation. The point at which the taking becomes sufficiently certain to give rise to a claim for compensation varies in each case.")

Plaintiff's claim accrued, if at all, when defendant took the cabin. And while defendant argues that it invaded the land by 2000, there are genuine issues of fact as to whether defendant ever physically possessed the cabin, excluded plaintiff from it, or claimed ownership of any part of it. Also, there is evidence that defendant spent much of the relevant time period deciding what should be done with the cabin, and then, after concluding that plaintiff owned it and it was encroaching, intermittently assuring plaintiff that it would resolve the issue.[9] Thus, a claim based on physical possession might never have accrued. *See Sacramento Grazing Ass'n, Inc. v. United States*, 96 Fed. Cl. 175, 186-188 (2010) (although fenced exclosures were located on allotment when the plaintiffs obtained their grazing permit, the exclosures did not actually prevent plaintiffs' livestock from accessing water, and thus, water rights takings claim did not accrue until defendant explicitly prohibited water use within the exclosures); *see also Applegate v. United States*, 25 F.3d 1579, 1582-1583 (Fed. Cir. 1994) (both gradual nature of physical damage to shoreline and government's promises to mitigate damage stayed accrual of takings

---

[8]     *See* Deposition of William Snow, Def.'s Mot. for Summary Judgment, Ex. 2 at 27:22-28:2 ("[W]e put in fence posts, steel fence posts with signs that say national forest boundary. We paint trees along the way, so it's very vividly marked so you can see the line very easily, so it was quite obvious that the line passed through the cabin by just going around and looking at it."); Deposition of Robert A. Luciano, Jr., *id.*, Ex. 9 at 27:7-9 ("Q. So you think that you saw those Forest Service signs in about 1998 after the flood? A. Yeah."); January 13, 2000 letter from plaintiff to Forest Supervisor Mark J. Madrid, Pl.'s corrected Cross-Mot. for Summary Judgment, Ex. 18, Docket No. 56-4 at 7 ("A relatively recent survey . . . dated March 5, 1993 . . . set the North line of the F/S boundary (South line of lot 2) bisecting the old homestead house . . . .")

[9]     *See* April 4, 2001 letter to plaintiff from Acting District Ranger G. Grandinetti, Def.'s Mot. for Summary Judgment, Ex. 16 ("The significance of the structure needs to be resolved through a determination under the Preservation of Antiquities Act. Depending on the decision of the State Historic Preservation Office, further actions might then be warranted."); June 22, 2004 letter to plaintiff from James M. Peña, Pl.'s corrected Cross-Mot. for Summary Judgment, Ex. 18, Docket No. 56-4 at 26 ("I have directed my staff to include your proposal to resolve your encroachment in our program of work for the ensuing years."); February 2, 2005 letter to plaintiff from District Ranger Angela L. Dillingham, Def.'s Mot. for Summary Judgment, Ex. 18 ("We look forward to working with [your agent] in the development and completion of an exchange."); April 24, 2007 letter to plaintiff from Acting Forest Supervisor Chris Knopp, *id.*, Ex. 19 ("We are willing to complete a STA boundary adjustment with you in order to resolve the issue.")

claim).  Thus, defendant is not entitled to summary judgment on the statute of limitations issue at this time, and the Court will resolve it after further discovery or a trial on the merits.

## IV.  DEFENDANT'S MOTION TO STRIKE

Defendant seeks to exclude ¶ 41 of the Declaration of Richard Lundy (Pl.'s corrected Cross-Mot. for Summary Judgment, Ex. 4, Docket No. 55-7) and ¶¶ 8-18 of the Declaration of Roxanne Jeskey (*id.*, Ex. 5, Docket No. 55-8) on relevance, competence, and hearsay grounds. (Def.'s Mot. to Strike at 1-3.)  Plaintiff submitted this evidence to prove that defendant rejected plaintiff's land exchange proposal in bad faith on the false ground that his property contained hazardous materials, and thus, that it would be futile for plaintiff to apply for permission to continue using his water rights under the 1866 and 1891 Acts.  However, whether it would have been futile for plaintiff to apply for permission under the 1866 and 1891 Acts is irrelevant, because defendant's decision to deny such permission – whether explicit or constructive – cannot be a taking.  *See* discussion *supra* Part III.A.1.  Plaintiff's water claim is unripe because he failed to apply for a SUP, not because he failed to apply for permission under the 1866 and 1891 Acts. Thus, the evidence that defendant seeks to exclude cannot create a genuine issue of material fact, and defendant's Motion to Strike is denied as moot.

## V.  CONCLUSION

Plaintiff's water rights claim is unripe.  Thus, the Court lacks jurisdiction and dismisses Count I of plaintiff's Complaint.  Plaintiff's real property claim (the cabin claim) contains genuine issues of material fact, and the Court will resolve the standing and statute of limitations issues after further discovery or a trial on the merits.  The Court grants in part and denies in part defendant's Motion for Summary Judgment and denies plaintiff's corrected Cross-Motion. Defendant's Motion to Strike is denied as moot.

s/ Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

11