# United States Court of Appeals for the Federal Circuit

---

**VIRGINIA MILTON AND ARNOLD MILTON, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED PERSONS, ET AL.,**
*Plaintiffs-Appellants*

**TRAVELERS EXCESS AND SURPLUS LINES COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1131, 2021-1132, 2021-1133, 2021-1134, 2021-1135, 2021-1136, 2021-1137, 2021-1138, 2021-1139, 2021-1140, 2021-1142, 2021-1143, 2021-1144, 2021-1145, 2021-1146, 2021-1147, 2021-1148, 2021-1151, 2021-1152, 2021-1155, 2021-1157, 2021-1159, 2021-1161, 2021-1162, 2021-1163, 2021-1164, 2021-1165, 2021-1167, 2021-1171, 2021-1172, 2021-1173, 2021-1174, 2021-1175, 2021-1176, 2021-1177, 2021-1178, 2021-1184, 2021-1186, 2021-1187, 2021-1188, 2021-1189, 2021-1190, 2021-1192, 2021-1193, 2021-1195, 2021-1196, 2021-1197, 2021-1198, 2021-1199, 2021-1200, 2021-1201, 2021-1204, 2021-1205, 2021-1206, 2021-1207, 2021-1208, 2021-1214, 2021-1215, 2021-1216, 2021-1217, 2021-1218, 2021-1220, 2021-1221, 2021-1222, 2021-1223, 2021-1224, 2021-1225, 2021-1230, 2021-1231, 2021-1232, 2021-1233, 2021-1234, 2021-1237, 2021-1238, 2021-1239, 2021-1240, 2021-1241, 2021-1242, 2021-1243, 2021-1244, 2021-1250, 2021-1251, 2021-1252, 2021-1253, 2021-1254,

MILTON v. US

2021-1255, 2021-1256, 2021-1268, 2021-1269, 2021-1270,
2021-1271, 2021-1272, 2021-1273, 2021-1274, 2021-1275,
2021-1276, 2021-1277, 2021-1279, 2021-1280, 2021-1281,
2021-1282, 2021-1283, 2021-1284, 2021-1285, 2021-1286,
2021-1287, 2021-1288, 2021-1289, 2021-1290, 2021-1291,
2021-1293, 2021-1294, 2021-1295, 2021-1296, 2021-1302,
2021-1303, 2021-1304, 2021-1305, 2021-1306, 2021-1307,
2021-1308, 2021-1309, 2021-1310, 2021-1311, 2021-1312,
2021-1313, 2021-1314, 2021-1315, 2021-1316, 2021-1317,
2021-1318, 2021-1319, 2021-1320, 2021-1322, 2021-1324,
2021-1325, 2021-1335, 2021-1336, 2021-1337, 2021-1338,
2021-1339, 2021-1341, 2021-1394, 2021-1398, 2021-1403,
2021-1404, 2021-1405, 2021-1406, 2021-1407, 2021-1427,
2021-1429, 2021-1431, 2021-1444, 2021-1455, 2021-1464,
2021-1465, 2021-1467, 2021-1468, 2021-1472, 2021-1479,
2021-1481, 2021-1482, 2021-1483, 2021-1492, 2021-1494,
2021-1499, 2021-1513, 2021-1529, 2021-1539, 2021-1540,
2021-1541, 2021-1847, 2021-1889, 2021-1890, 2021-1891,
2021-1894, 2021-1947, 2021-2047

———————————

Appeals from the United States Court of Federal Claims in Nos. 1:17-cv-01235-LAS, 1:17-cv-09002-LAS, Senior Judge Loren A. Smith.

———————————

Decided: June 2, 2022

———————————

RUSSELL STANLEY POST, Beck Redden LLP, Houston, TX, argued for all plaintiffs-appellants. Plaintiffs-appellants Virginia Milton, Arnold Milton, Edward J. Bush, Christopher Tita, Ijang Fomukong-Tita, Caleb S. Atwood, Juan Atwood, Sook N. Byun, Suck D. Cho, Erin R. Danielson, Stephen E. Danielson, John DeFilippo, Marylyn L. DeFilippo, Energy Building Systems, Inc., Jorge E. Galindo, Ashish Gupta, Shibani Gupta, L. Katherine Haute, Mary C. Horany, Monzer Hourani, Kaslik

Investments, L.C., Gerrit O. Kirkwood, Chil S. Ko, Joanna Krakowiak, Hyunil Jo Lee, Shina Lee, Charles J. Lucas Jr., Jamie Manning, Rad Manning, Tommy T. Maoz, Yong H. Marx, Ina N. O'Connor, Frank Papapanagiotou, Karen N. Pillai, Rajeev R. Pillai, Cherie D. Platt, John D. Platt, Lauren A. Platt, Prashanthi M. Prasad, Amer A. Rahim, Deborah D. Regone, William R. Regone, Sophia Riemann, Matt Sharrock, Traci Sharrock, Sachin Sheldekar, Gerald Siegmyer, Marian Siegmyer, Julie D. Sparks, Michael W. Sparks, John Hughes Tenison, Catherine C. Yen, Jerome C. Yen, Debora H. York, William H. York, David Young, Tami Young, Nan Zhang, Xuechen Zhang, Weili Zhu, Sejla Bakalovic, Briarhills Office, Ltd., Beverly Bugler, Richard Bugler, Allen Caine, Fernando Carvalho, Thomas Damsgaard, Helena De Ferro, Jean Ann Dieudonne, John Sutter Dieudonne, Blanca Franklin, Bruce Franklin, Rosa Frimm, Michael Lawson, Penelope P. Lawson, Heather Papadopoulos, John Papadopoulos, Risa Pippin, Dawn Rasch, Steven Rasch, Bamir Rudic, Gabrielle Strout, Marceline Sutter, Jennifer Teixeira, Maurice Teixeira, Nancy N. Tucker, Thomas E. Tucker, Charlie Whitson, Linda Whitson, Steve Wortham, Shoelen Derrington, Carlos Escobar, Susan P. O'Keefe, Genie Panaccione, Robert Panaccione, Byron N. Plant, Lysette M. Plant, Keith Ron, T. Scott, Eileen D. Zwart, Peter Zwart, Donald R. Ray, Judy Ray, Billie Williams, Liliana Williams also represented by PARTH GEJJI, DAVID M. GUNN.

RAND PATRICK NOLEN, Fleming, Nolen & Jez, L.L.P., Houston, TX, for plaintiffs-appellants Virginia Milton, Arnold Milton, Edward J. Bush, Christopher Tita, Ijang Fomukong-Tita.

JOSEPH CARL CECERE, JR., Cecere PC, Dallas, TX, for plaintiffs-appellants Martha Pollack, AGL, LLC, Jonathan Levy.  Also represented by JASON ARON ITKIN, NOAH MICHAEL WEXLER, Arnold & Itkin, LLP, Houston, TX.

JEFFREY RANKIN LEARNED, Denenberg Tuffley, PLLC, Southfield, MI, for plaintiffs-appellants American Home Assurance Company, Great Lakes Insurance SE, Lexington Insurance Company.

BRYANT STEVEN BANES, Neel, Hooper & Banes, P.C., Houston, TX, for plaintiffs-appellants Randy D. Horsak, Mervin Chess, Randall Teufel. Also represented by SARAH P. HARRIS.

BENJAMIN LEWIS, Carroll Warren & Parker, Jackson, MS, for plaintiff-appellant Travelers Excess and Surplus Lines Company. Also represented by MONIKA F. MOORE, Houston, TX.

BRIAN C. TOTH, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEAN E. WILLIAMS.

NANCIE GAIL MARZULLA, Marzulla Law, LLC, Washington, DC, for amici curiae Hulak Abed-Stephen, Zavik Abed-Stephen, Joan C. Alford. Also represented by ROGER J. MARZULLA; FRED HAGANS, Hagans Montgomery Hagans, Houston, TX.

————————————

Before LOURIE, CHEN, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Appellants Virginia Milton and hundreds of other individuals and companies owned property downstream from the Addicks and Barker Dams in Houston, Texas. They allege that the Army Corps of Engineers flooded their properties when it opened the dams' floodgates during Hurricane Harvey. Now, they appeal from the decision of the United States Court of Federal Claims holding that they do not have a cognizable property interest in perfect flood

control, and thus they cannot state takings claims against the United States. *See In re Downstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 147 Fed. Cl. 566 (2020). We hold that Appellants have alleged cognizable property interests in flowage easements, reverse the decision of the Court of Federal Claims, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

At the western edge of Houston there is a watershed called Buffalo Bayou. J.A. 992. Despite its picturesque name, Buffalo Bayou was the site of "devastating floods in 1929 and 1935." J.A. 995. In the floods' aftermath, Congress authorized construction of dams on the bayou and its tributaries. Pub. L. No. 75-685, 52 Stat. 802, 804 (1938). The result was Barker Dam (completed in 1945) and Addicks Dam (completed in 1948). J.A. 995–97. By 1963, each dam held behind it a large reservoir and had five gated outflowing conduits. J.A. 995–96.

In line with its responsibility for flood control, the Corps adopted the Addicks and Barker Reservoirs Water Control Manual published in 2012. *See* J.A. 974–1131. The Manual provides that if an inch of rain falls within a 24-hour period or if downstream flooding is expected, the Corps must close the dams' floodgates. J.A. 1022. If the water in the reservoirs reaches set heights—101 feet behind Addicks Dam or 95.7 feet behind Barker Dam—a surcharge regulation kicks in. J.A. 1023. At this point, the Corps must monitor whether the inflow will continue to cause the reservoirs to rise. *Id.* "If inflow and pool elevation conditions dictate," the Corps releases water from the reservoir according to a set schedule. *Id.* At the beginning of 2017, such induced surcharges had never been made. J.A. 1416.

Then, Hurricane Harvey approached Houston. The reservoirs were empty before the storm made landfall. J.A. 4661, 5194. On August 25, 2017, the Corps closed the dams' floodgates. J.A. 5202. Shortly after, Hurricane Harvey made landfall. J.A. 936. Although Hurricane Harvey soon weakened into a tropical storm, it still poured more than thirty inches of water onto the city in four days. *Id.* In the early hours of August 28, the conditions for the induced surcharge regulations were met. J.A. 4657. The Corps proceeded to release up to 8,000 cubic feet per second of water from behind the dams. J.A. 5208–09. The following day, it increased the release from up to 8,000 to 12,000 cubic feet per second. J.A. 5209–11. On August 30, it again increased the release from 12,000 to 13,000 cubic feet per second, a rate the Corps maintained until September 4. J.A. 5211–13.

Substantial downstream flooding followed. The Government's expert believes that some of Appellants' properties were flooded for more than eleven days and some were flooded at a maximum depth greater than eight feet above the first finished floor. J.A. 2315. Several Appellants testified that they evacuated their homes by boat. J.A. 1674–94, 4195, 4270. Appellants assert that many of their properties incurred hundreds of thousands, if not millions, of dollars in damage each. *See* J.A. 1721–1861, 4195.

### B.  Procedural History

Following this tragedy, hundreds of property owners filed complaints in the Court of Federal Claims alleging that the flooding constituted an uncompensated, physical taking of their property by the Government. *In re Downstream*, 147 Fed. Cl. at 570, 574. The Court of Federal Claims joined all these cases into a Master Docket and then split them into an Upstream Sub-Docket—for properties upstream of the dams—and a Downstream Sub-Docket—for properties downstream of the dams. *Id.*

In the Upstream Sub-Docket, the court found that plaintiffs were owners of land not subject to flowage easements, meaning that they had valid property interests that could be taken. *In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 146 Fed. Cl. 219, 248–49 (2019). After a trial, the court found that the Government flooded plaintiffs' properties and so engaged in a taking. *Id.* at 264.

The Downstream Sub-Docket proceeded differently. There, the court ultimately granted the Government's motions to dismiss and for summary judgment and denied Appellants' motion for summary judgment. *In re Downstream*, 147 Fed. Cl. at 584. Specifically, the court held that Appellants did not articulate a cognizable property interest that the Government could take because "neither Texas law nor federal law creates a protected property interest in perfect flood control in the face of an Act of God." *Id.* at 570. Under Texas law, the court wrote, Appellants "own their land subject to the legitimate exercise of the police power to control and mitigate against flooding." *Id.* at 578. The court held that "Texas law has specifically limited liability in both a takings and a tort context where the operator of a water control structure fails to perfectly mitigate against flooding caused by an Act of God." *Id.* at 579. Finally, the court concluded that as "each of the plaintiffs in this case acquired their property *after* the construction of the Addicks and Barker Dams and Reservoirs, plaintiffs acquired their properties subject to the superior right of the Corps to engage in flood mitigation and to operate according to its Manual." *Id.* at 580 (emphasis in original).

The court also did not find a cognizable property interest under federal law. Looking to the Flood Control Act of 1928, 33 U.S.C. § 702c, the court held that "simply owning property that benefits from flood control structures does not by itself confer upon those owners a vested right in perfect flood control." *Id.* at 582. The court further wrote that the Supreme Court has "routinely" held that "the government cannot be held liable under the Fifth Amendment for

property damages caused by events outside of the government's control." *Id.* at 583 (collecting cases). Thus, the court concluded that because there was no cognizable property interest under either state or federal law, Appellants had failed to state a claim upon which relief could be granted. *Id.* at 583–84.

These appeals followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II.   DISCUSSION

### A.   Legal Framework

The Fifth Amendment forbids the government from taking private property "for public use, without just compensation." U.S. Const. amend. V. Courts must evaluate two prongs in determining whether a government action constitutes a taking. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009) (citation omitted).

"We review the Court of Federal Claims' legal conclusions de novo." *Hardy v. United States*, 965 F.3d 1338, 1344 (Fed. Cir. 2020) (citing *Holland v. United States*, 621 F.3d 1366, 1374 (Fed. Cir. 2010)). Whether a compensable property interest exists is a question of law. *Id.* (citing *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013)). "Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings." *Id.* (quoting *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009)).

## B.   The Flood Control Act

Before turning to whether a cognizable property interest exists, we first address the Government's argument that it is immune from suits alleging takings based on its flood control measures.  The Government contends that Congress enacted the Flood Control Act of 1928, 33 U.S.C. § 702c, "to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability associated with flood control."  Appellee's Br. 25 (quoting *United States v. James*, 478 U.S. 597, 608 (1986)).  In other words, the Government argues that the United States is immune from takings claims that stem from Government attempts at flood control.

The Government cannot avoid suit so easily.  Under the Tucker Act, which predates the Flood Control Act by more than 40 years, the United States granted the Court of Federal Claims jurisdiction over—and waived sovereign immunity from—"any claim against the United States founded either upon the Constitution, or . . . for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  In *California v. United States*, we held that there was no evidence in the text or legislative history of the Flood Control Act "that Congress had 'withdrawn the Tucker Act grant of jurisdiction.'"  271 F.3d 1377, 1383 (Fed. Cir. 2001) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984)).  Section 702c, thus, does not preclude Court of Federal Claims jurisdiction over this case.

## C.   Existence of a Cognizable Property Interest

Having concluded that the Government is not immune from Appellants' takings claims, we turn to whether the Court of Federal Claims correctly determined that Appellants did not establish a cognizable property interest.  We hold that the Court of Federal Claims erred, and such a cognizable property interest exists.

We are tasked with examining whether Appellants have "identified" a cognizable property interest. *Acceptance*, 583 F.3d at 854. Appellants' master complaint alleges that the Government took flowage easements in the flooded properties. J.A. 121 (¶ 117). We, therefore, consider whether Appellants have a cognizable property interest in flowage easements.

"It is well settled that existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Acceptance*, 583 F.3d at 857 (internal quotation omitted). Texas courts have recognized that property owners have interests in flowage easements under Texas law. *See, e.g.*, *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 802 (Tex. 2016); *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 550 (Tex. 2004); *Gleghorn v. City of Wichita Falls*, 545 S.W.2d 446, 447 (Tex. 1976). And so, under Texas law, a right to grant a flowage easement "is one of the rights in the bundle of sticks of property rights that inheres in a *res*." *Acceptance*, 583 F.3d at 857 (quoting *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1376 (Fed. Cir. 2004)). The Government argues that several exceptions negate Appellants' property interests. We disagree.

First, the Government contends that Appellants do not have a cognizable property interest because "Texas law recognizes that 'all property is held subject to the valid exercise of the police power' by the government to provide for public health and safety." Appellee's Br. 19 (quoting *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012)). The Government asserts that flood control is such an exercise of the police power. *Id.* at 19–20. But the Government stretches the holdings of the cases it cites to reach that conclusion. In *Stewart* and two other cases that the Government cites—*Severance v. Patterson*, 370 S.W.3d 705 (Tex. 2012), and *Lombardo v. City of Dallas*, 73 S.W.2d 475 (Tex.

1934)—the Texas Supreme Court expressly tied the exercise of the police power to the abatement of nuisances. *See Severance*, 370 S.W.3d at 710; *Stewart*, 361 S.W.3d at 569; *Lombardo*, 73 S.W.2d at 479. Here, there is no allegation that Appellants' properties constituted public nuisances. And the case that the Government cites to connect the control of flood waters to the police power—*Motl v. Boyd*, 286 S.W. 458 (Tex. 1926)—is about the scope of riparian rights, not flowage easements or even takings. *Id.* at 463; *see Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 105 (Tex. 1961) (similarly distinguishing *Motl*). A general police power exception to property rights does not exist under Texas law. *Stewart*, 361 S.W.3d at 575 (noting that Texas law has "moved beyond the earlier notion that the government's duty to pay for taking property rights is excused by labeling the taking as an exercise of the police powers" (quoting *Steele v. City of Hous.*, 603 S.W.2d 786, 789 (1980))).

The Government cites other cases that it argues "rejected claims for takings from the controlled release of water from reservoirs in response to unprecedented rainfall," consistent with the Government's understanding of the scope of the police power. Appellee's Br. 20. But these cases are also distinguishable. *Waller v. Sabine River Authority*, Case No. 09-18-00040-CV, 2018 WL 6378510, at *5 (Tex. App. Dec. 6, 2018), *Sabine River Authority v. Hughes*, 92 S.W.3d 640, 642 (Tex. App. 2002), and *Wickham v. San Jacinto River Authority*, 979 S.W.2d 876, 883–84 (Tex. App. 1998), each concluded that plaintiffs had failed to present sufficient evidence that water released from the relevant dam flooded their property. Thus, in no case did the relevant river authority engage in a "taking" under the Texas constitution. *Waller*, 2018 WL 6378510, at *4–5; *Sabine*, 92 S.W.3d at 641–42; *Wickham*, 979 S.W.2d at 880, 884. None of these decisions turned on whether the plaintiffs had a cognizable property interest.

Similarly, the Government incorrectly asserts that Appellants do not have a cognizable property interest because Hurricane Harvey was an Act of God. *See* Appellee's Br. 20–21. Rather, Acts of God relate, if at all, to whether a taking has occurred, not whether a party has a cognizable property interest. For example, in *Kerr*, the Texas Supreme Court gave six reasons for concluding that a taking had not occurred under the Texas constitution, one of which was that the flooding resulted from Acts of God. 499 S.W.3d at 799, 807. Other cases that the Government cites similarly do not stand for the broad proposition that property is held subject to Acts of God. *See Luther Transfer & Storage, Inc. v. Walton*, 296 S.W.2d 750, 753 (Tex. 1956) (discussing an Act of God as part of proximate causation analysis in negligence lawsuit); *McWilliams v. Masterson*, 112 S.W.3d 314, 320–21 (Tex. App. 2003) (same); *Benavides v. Gonzalez*, 396 S.W.2d 512, 514 (Tex. App. 1965) (addressing defense to Texas statute prohibiting "any person to divert the natural flow of surface waters in this State or to impound such waters in such manner as to damage the property of another by overflow of such waters so diverted or impounded").

The Government next contends that Appellants' property rights "are limited by the owners' expectations as of the date they acquired their properties." Appellee's Br. 22. Again, we disagree.[1] One case that the Government relies on turns on the level of intent needed to state a takings claim under the Texas Constitution. *City of Tyler v. Likes*, 962 S.W.2d 489, 504–05 (Tex. 1997). *Likes* does not suggest a broad limit on property rights. *Id.* at 504–05 (not discussing scope of property rights when addressing plaintiff's takings claim). And the Government's other case—*City of*

---

[1]    We note that plaintiffs allege a physical, rather than a regulatory, taking. *In re Downstream*, 147 Fed. Cl. at 570.

*Dallas v. Winans*, 262 S.W.2d 256, 259 (Tex. Civ. App. 1953)—is not about takings; instead, *Winans* discusses to whom a nuisance cause of action accrues. There is no blanket rule under Texas law that property rights are held subject to owners' expectations on acquisition.

Finally, we turn to the Government's argument that Appellant's property rights are held subject to the police power under federal law. *See* Appellee's Br. 28–32. The Supreme Court has rejected the notion that private property is subject to "unbridled, uncompensated qualification under the police power." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992). But the Supreme Court has recognized that a taking may be non-compensable if there is "the destruction of 'real and personal property, in cases of actual necessity, to prevent the spreading of a fire' or to forestall other grave threats to the lives and property of others." *Id.* at 1029 n.16 (quoting *Bowditch v. Boston*, 101 U.S. 16, 18–19 (1880)); *see also Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922); *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1377–78 (Fed. Cir. 2013). The doctrine of necessity is not relevant, however, to whether Appellants have asserted a cognizable property interest; rather, the doctrine is a defense.[2] *See TrinCo*, 722 F.3d at 1379. The doctrine, thus, does not change our conclusion that the Court of Federal Claims erred in concluding that Appellants failed to assert a cognizable property interest.

### D.  Existence of a Taking

Both Appellants and the Government urge us to reach the second prong of the takings analysis and enter summary judgment in their favor. We decline this invitation. We have noted that "due to the fact-intensive nature of takings cases, summary judgment should not be granted

---

[2]    Indeed, the Government has asserted the necessity doctrine as a defense. J.A. 723.

precipitously." *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed. Cir. 1983)).  Thus, it is appropriate to remand this case to the Court of Federal Claims to address the second prong of the takings analysis in the first instance.  In other words, we leave it for the lower court to consider: (1) whether Appellants have shown that a temporary taking occurred under the test applicable to flooding cases, *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 39 (2012); (2) whether Appellants have established causation when considering "the impact of the entirety of government actions that address the relevant risk," *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1364 (Fed. Cir. 2018), *cert. denied* 139 S. Ct. 796 (2019); and (3) whether the Government can invoke the necessity doctrine as a defense.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Federal Claims and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**